## JOHN L. ROPER LUMBER CO. v. HINTON et al.

(District Court, E. D. North Carolina. August 23, 1919.)

1. **EVIDENCE ☞452, 460(7)—PAROL EVIDENCE ADMISSIBLE TO EXPLAIN LATENT AMBIGUITY IN DEED.**

   A deed describing land as the Old Lebanon juniper swamp, etc., is sufficiently definite to admit parol evidence to fit the description to the land conveyed; the description being a latent ambiguity.

2. **ESTOPPEL ☞27—OF GRANTEE FROM PURCHASER UNDER WARRANTY DEED TO SET UP ADVERSE TITLE.**

   Persons claiming through a grantor, who warranted title, are estopped from asserting as against his grantee title to lands included within the description of the first conveyance, regardless of whether grantor, who was their source of title, had title to the property included.

3. **DEEDS ☞114(1)—CONSTRUCTION OF DESCRIPTION REFERRING TO COUNTY RECORDS.**

   Deed describing the land conveyed as the Old Lebanon juniper swamp; title to which the grantor derived from E., administrator, which made reference to the county records, etc., *held* not to include title two small parcels of highland within the general boundaries of the swamp, which the grantor had acquired from other sources; it appearing that the smaller parcels had for many years been distinguished from the remainder of the swamp.

4. **DEEDS ☞93—INTENT OF PARTIES SOUGHT IN CONSTRUCTION OF DEED.**

   The courts will endeavor to ascertain and effectuate the intention of the parties to a deed, and such intention will be sought by reference to the language used by the grantor.

5. **DEEDS ☞90—AMBIGUOUS LANGUAGE CONSTRUED FAVORABLY TO GRANTEE.**

   If the language in a deed is of doubtful meaning, capable of more than one construction, that construction most favorable to the grantee will be adopted.

6. **DEEDS ☞112(1)—OTHER DEED OR RECORD REFERRED TO CONSTRUED AS PART OF DEED.**

   When a grantor, for the purpose of rendering a description of the property more certain, etc., refers to another deed or record, such deed or record so referred to will be treated as if embodied in the deed in which reference is made, and the premises therein described will pass under it as if written in the deed.

7. DEEDS &111—PARTICULAR DESCRIPTION CONTROLS GENERAL DESCRIPTION.
　　When a deed contains a general description, followed by a particular
　　description of the premises granted, the latter will control the former.

8. DEEDS &95—EVERY CLAUSE GIVEN INTENDED EFFECT.
　　Every clause and part of a deed should be given that force and effect the
　　parties must have intended.

9. DEEDS &118—EVIDENCE SUFFICIENTLY IDENTIFYING PARCELS NOT INCLUD-
ED IN DESCRIPTION.
　　Where defendants claimed small parcels of highland within the general
　　boundaries of the swamp, which their predecessor had granted to those
　　under whom plaintiff claimed, held, that the small parcels of highland
　　which were not included in the swamp were with reasonable certainty
　　correctly located.

In Equity. Bill by the John L. Roper Lumber Company against C.
L. Hinton and others to enjoin trespass and acquire title to land. Bill
dismissed.

J. Kenyon Wilson, of Elizabeth City, N. C., and Small, MacLean,
Bragaw & Rodman, of Washington, N. C., for plaintiff.

C. E. Thompson and Aydlett, Simpson & Sawyer, all of Elizabeth
City, N. C., for defendants.

CONNOR, District Judge. The subject-matter of this suit con-
sists of two tracts or parcels of land, described in the pleadings and
the deeds introduced in evidence as the "Thornton" tract, of 85 acres,
and the "Gales" tract, of 281 acres, situate in Camden county, N. C.
The record evidence discloses the following facts:

John L. Hinton, the ancestor of defendants, under whom they claim
title, on March 1, 1854, conveyed to James B. Norfleet:

"A certain tract of swamp land called and known as the Old Lebanon
juniper swamp, lying in the counties of Gates and Camden, and supposed to
contain 5,000 acres, more or less, and is the same tract of juniper swamp to
which I derived title from Hamlin L. Epps, administrator and commissioner
of Admiral Brinkley, deceased, [as by] reference to the records of the regis-
ter's office of Camden county, North Carolina, [will] at large and more fully
appear."

This deed contains a covenant of warranty against "all and every
incumbrance, claim, or demand from, by, or through him, the said
John Hinton, or any person claiming by, or through, or under him."
It was admitted to probate at the March term, 1854, of Camden coun-
ty court, and registered in said county June 19, 1854, Book Z, page 596.

[1] The description of the land as "called and known the 'Old
Lebanon juniper swamp'" is sufficiently definite to admit parol evi-
dence to "fit the description to the thing." The description is what the
courts refer to as "a latent ambiguity" and open to parol evidence to
make it definite. Deaf and Dumb Asylum v. Norwood, 45 N. C. 65.

The grantor points to the source from which more definite descrip-
tion may be found—the deed under which he derived title. Reference
to this deed and the records of the register's office of Camden county
discloses a description in substantially the same language as in the
deed to Hinton, as the "juniper swamp called the Old Lebanon," refer-
ring to "a deed from Thomas G. Benton to Brinkley and Riddick."

&For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Reference to the deed from Thos. G. Benton to Riddick and Brinkley, dated August 1, 1847, discloses a general description as:

"A certain tract of land containing 5,000 acres, more or less, being in the county of Camden in the state of North Carolina, and known by the name of Old Lebanon swamp, being the same tract or parcel of land which the said Thomas G. Benton derived title from John B. Benton, by deed of bargain and sale bearing date the 3d day of February, 1843, and duly recorded in the clerk's office of Camden county in North Carolina and is bounded as follows: On the north by the lands of Gisbourne Cherry and George Happer, on the east by the lands of Harrison Weston and others, on the south by the lands of Gisbourne Cherry and others, and on the west by the lands of Joseph T. Allyn and others."

Reference to the deed from John B. Benton to Thos. G. Benton, February 3, 1843, discloses a description as "the Old Lebanon swamp, being the same tract or parcel of land which said John B. Benton purchased at the sale of James N. McPherson, deceased," followed by calls for the same adjoining lands as in the next preceding deed.

Reference to the next and other deeds, referred to, and called for in the chain of title, discloses substantially the same description as "the Old Lebanon swamp, or Old Lebanon," until we reach a deed from Ann Scott to Wylie McPherson, dated January 20, 1818, in which the land is described as:

"Five undivided sixth parts of a tract of land lying in the county of Camden, state of North Carolina, containing 6,000 acres, more or less, called and known by the name of the Old Lebanon estate, being the interest lately held by Exum Newby."

Reference to the deed from Exum Newby to Ann Scott, dated February 26, 1810, discloses the following description:

"All my undivided five-sixths of the Old Lebanon estate in the county of Camden, * * * which said five-sixths of the Old Lebanon estate I, the said Exum Newby, purchased of Thomas Fitt and Mathias E. Sawyer, as by these deeds of sale to me will appear. The lands composing the said Old Lebanon estate, lying and being in Camden county, are butted and bounded as follows, viz: Beginning at Pasquotank river, at Robert Edney's line, and running north along his line to the canal, thence along the canal to Gales' creek or run, then south to the river Pasquotank, thence up the said river Pasquotank to the head thereof, thence northwest to the line of the New Lebanon lands, thence along the line of the New Lebanon lands to Wainwright's patent line at Cartright's corner, thence south to the river Pasquotank, thence along the said river to the first station. Excepting thereout, the two tracts called Thornton and Gales; these two tracts containing 365 acres, or thereabouts. The whole of the lands belonging to the Old Lebanon being estimated at 7,000 acres, more or less."

Mathias E. Sawyer, on August 20, 1803, executed a deed conveying to Exum Newby one-third interest in a tract of land, known as Old Lebanon, containing the same description as the deed from Newby to Ann Scott, omitting the exception of the Thornton and Gales tracts.

On June 11, 1803, Thomas Fitt executed to Exum Newby a deed conveying one-half undivided interest in Old Lebanon, containing the same description as the deed to Ann Scott, with the exception of the Thornton and Gales tracts.

On June 25, 1800, Isaac Lamn, sheriff, conveyed to Thomas Fitt "the one-half undivided interest of William Reas in the Old Lebanon

estate," containing the same description as that contained in the deed of Fitt to Newby, with the exception of the Thornton and Gales tracts, and also referring to "a deed from John Hamilton to Mathias E. Sawyer."

On September 6, 1797, John Shaw conveyed to William Reas one-third part of the Old Lebanon estate, which he recites was owned by Mathias E. Sawyer, Enoch Sawyer, and himself as tenants in common. This deed contains the same description as the one from Exum Newby to Ann Scott, with the exception of the Gales and Thornton tracts.

Several deeds executed subsequent to June 3, 1795, by John Hamilton, Thomas Harvey, and others to Mathias E. Sawyer, are introduced, conveying tracts of land which appear to include the Old Lebanon swamp, but the boundaries do not correspond with those contained in the deed from Sawyer to Exum Newby and those executed subsequent thereto. There is nothing in these deeds relating or referring to the Gales and Thornton tracts. John Hamilton's deeds are dated September 22, 1795.

On June 3, 1795, John Hamilton executed a paper writing in the following words:

"Whereas, Ben Jones, the legal proprietor of the Lebanon swamp, Thomas Harvey, Nathaniel Payne, owners and coproprietors of 25 shares of twenty-five thirtieth parts as copartners of the same and commonly called the Lebanon Company lands, have on the day of the date hereof laid off to the subscriber four shares by way of division of the said Lebanon Company lands, which four shares it is alleged do surround the tracts of land called Gales and Thornton: Now these writings witness that I do hereby now and forever relinquish all right, title, claim, and demand unto the said two tracts, Gales and Thornton, having at present no interest therein."

Following his signature, under seal, to the foregoing, are these words:

"The said Thornton tract agreeably to the patent contains eighty-three acres and Gales tract one hundred and forty-one acres and a half, which quantity the said Hamilton hereby agrees to convey by a deed of relinquishment to any person who the said Jones may sell the same to"

—under seal, acknowledged in open court, and recorded in Camden county October 26, 1795.

On July 10, 1788, the state of North Carolina issued grant No. 40 to Benjamin Jones, covering 19,200 acres of land situate in Camden county, being a juniper swamp on the head of Pasquotank river. This land appears thereafter to have been known as the Lebanon swamp, and became the property of a company composed of Benjamin Jones, Thomas Harvey, Nathaniel Payne, and John Hamilton, called the "Lebanon Company."

On June 2, 1795, deeds reciting that, "without the intervention of a court of chancery, it was mutually agreed that a division or partition of the Lebanon Company's lands be made," etc., were introduced, among them a deed executed by Jones, Harvey, and Payne to John Hamilton, conveying to him that part of the Lebanon Company's lands so described to "take out of the Lebanon patent three thousand and six hundred and twenty-five acres, and no more." This land, as ap-

pears by the subsequent deeds, was thereafter known as, and called, the Old Lebanon swamp, as distinguished from the remaining portion of the Lebanon Company's land, thereafter referred to as New Lebanon. The surveyors locate "Old Lebanon," as shown on the map introduced in evidence, within the lines marked A, B, C, D, E, F.

It will be observed that the first paper writing referring to the Gales and Thornton tracts is the relinquishment by John Hamilton, June 3, 1795, one day after he acquired title by the deeds of Jones, Harvey, and Payne. The legal effect of this paper will be considered later. It is referred to now as a link in the chain of the record evidence.

To understand why this paper was executed, it becomes necessary to refer to two grants. On February 5, 1758, 30 years prior to the Benjamin Jones grant, Earl Granville conveyed to Samuel Edney:

"All that tract or parcel of land situate, lying, and being in the parish of St. Peters, in the county of Pasquotank, and in the said province, on the north side of Pasquotank river, in the desert, beginning at a gum on the west side of Juniper run, thence N. 77° W. 4½ chains to a gum, thence N. 30° W. 17 chains to a poplar, then N. 42° E. 40 chains, then S. 80° E. 40 chains, then S. 32° E. 41 chains, then S. 15° E. 20 chains to the first station, containing in the whole two hundred and eighty-one acres."

This deed was duly recorded in Pasquotank county. (Camden county was formed in 1777.)

On March 19, 1762, Samuel Johnson, governor, granted to Samuel Edney:

"A tract of land in Pasquotank county, on the north side of Pasquotank river, called 'the World's End,' beginning at a gum, thence N. 60° W. 40 chains, thence N. 30° E. 18 chains, thence N. 67° E. 43 chains, thence S. 35° W. 25 chains, to the first station, containing 85 acres."

If these two tracts are located within the boundaries of the Old Lebanon swamp, being of prior date to the Benjamin Jones grant, Samuel Edney had the superior title, unless it had been lost by some means recognized by the law. There is evidence, and I find as a fact, that for many years these two tracts were known and referred to as the Thornton and Gales tracts. It is manifest that they were so known as early as June 3, 1795, to the owners of the Lebanon Company lands. John Hamilton so designates them at that date. The deeds referred to expressly except them from the Old Lebanon swamp by those names, and the number of acres which they are said to contain corresponds with the grants. Assuming that these two tracts are within the boundaries of the Old Lebanon swamp, they are included in the description contained in the deeds from Jones, Harvey, and Payne to Hamilton, June 2, 1795. The paper writing which he executed June 3, 1795, did not convey them to any grantee. It was a mere disclaimer of title, followed by a promise to convey them to any person whom Benjamin Jones should direct. The relevancy of this paper consists in its evidential value, recognizing the fact that the two tracts were within the boundaries of the Old Lebanon swamp, but were held by a superior or paramount title. In his conveyance to Mathias Sawyer, he makes no reference to these tracts. When John Shaw, who acquired a one-third part of the Old Lebanon swamp, conveyed to Rea, September 6, 1797,

he excepted "the Gales and Thornton tracts, containing 365 acres," which is the number of acres, less one, contained in these tracts, and refers to the "patent boundaries of the two small tracts." It will be observed that Shaw executed two deeds to Rea, of same date—one deed conveying one-third, and the other one-sixth, part; the boundaries and exception are the same in both deeds. The description in the deed from Sheriff Lamn for Rea's interest to Fitt follows these deeds, as does the deed from Fitt to Newby, and Newby to Ann Scott, and her deed to Wiley McPherson, February 20, 1818. It is, therefore, manifest that McPherson did not acquire title by these deeds to the Gales and Thornton tracts. It is immaterial in this phase of the case in whom the title to the two tracts was vested; they are expressly excepted from the deeds under which John L. Hinton derived title.

Passing the question whether the two tracts can be located, and assuming that they are within the boundaries of the Old Lebanon swamp, or Old Lebanon, the question is presented whether the description in the deed from Hinton to Norfleet includes them. The land which he conveyed—

"is the same tract of juniper swamp to which I derived title from Hamlin L. Epps, administrator and commissioner of Admiral Brinkley, deceased."

[2] If the two tracts in controversy are within this description, it is immaterial whether Hinton had title to them, because he warrants the title to all of the land conveyed "as against himself and those claiming under, by, or through him." It being conceded that defendants claim under him, they are estopped by his warranty. Hallyburton v. Slagle, 132 N. C. 947, 44 S. E. 655. Defendants insist that their ancestor did not "derive title" to the Gales and Thornton tracts from Hamlin L. Epps, administrator, because Admiral Brinkley, his intestate, had no title; that, on the contrary, he "derived title" to these tracts from Samuel Edney, the original grantee and owner of the paramount title. The question of title, therefore, becomes material upon the question of description. This necessitates an examination of the title to the two tracts.

[3] The record evidence discloses that:

On December 27, 1760, Samuel Edney conveyed to Newton Edney one-half of the Gales tract, described by metes and bounds, "containing 140 acres." This deed was duly proven and registered February 15, 1762. On October 7, 1765, Newton R. Edney conveyed by same description to Robert Cartwright. On January 29, 1783, Robert Cartwright conveyed by the same description to Josiah Sexton. No deed from Sexton is introduced. On May 30, 1796, Benjamin A. Jones conveyed to Enoch Sawyer by same description, concluding:

"It being the whole of the land which the said Benjamin A. Jones bought of Jeremiah Sexton."

He refers to the land as the "Gales tract." On February 6, 1816, Enoch Sawyer conveyed by same description to Thomas McDaniel, also referring to the land as the "Gales tract." On January 24, 1818, Thomas McDaniel conveyed by same description to Hollowell Old, referring to it as the "Gales tract." On December 1, 1770, Samuel

Edney conveyed to Timothy Hixon the other half of his 281-acre patent or grant. It will be observed that the first call in this deed "is a juniper adjoining a conveyance to Newton Edney out of said patent." On February 18, 1775, Hixon conveyed by same description to Newton R. Edney. On December 16, 1791, Newton E. Edney conveyed by same description to Joseph Edney. In October, 1796, Joseph Edney conveyed by same description to John Shaw. On May 5, 1800, Shaw executed a deed to Thomas B. Littlejohn, conveying, among other tracts:

"One other tract of land lying in Camden county, adjoining the Old Lebanon mill, containing about 150 acres of land, known by the name of Thornton."

While this description is rather indefinite, in view of the fact that it does not appear that Shaw owned the 85-acre tract, and in a short time thereafter conveyed the same land to Pugh, it is a reasonable inference that the land conveyed was the same tract purchased from Shaw. On November 5, 1812, Littlejohn conveyed to George Pugh a tract described as:

"A part of a patent granted to Samuel Edney, commonly called the Morris land, beginning at the river swamp near the Juniper run, at the dividing line between said tract and the tract called Gales, running nearly up the said run to the said patent line, thence along the said line westwardly to a poplar near the river swamp, thence along said patent line S. 80° E. to the place of beginning, containing, by estimation, 150 acres, more or less."

Reference to the calls in the deed from Earl Granville to Edney shows the call, S. 80° E., the call for the poplar, and other calls, indicating that this tract is the same part of the Gales, or 281-acre, tract conveyed by Edney to Hixon. The reference to it as "the Morris land" may be accounted for by a mistake in copying. On July 28, 1813, Pugh conveyed to Hollowell Old by the same description, and calls it "the Gales tract." This deed conveys only one-half of the tract which Littlejohn conveyed to Pugh.

The next link in the chain of title is the petition in the county court of Camden county, October term, 1826, by the heirs of Old, followed by the report of commissioners. John Hinton, an infant, represented by his guardian, Lewis Hinton, is one of the petitioners. As is usual, the description of the several tracts is very indefinite. It is claimed that the tract described as "Old Lebanon, three hundred acres," is the Gales tract. It is allotted to John Hinton as "a tract of land and swamp lying above Gales run, containing two hundred and ninety acres." It is stated that a plat is attached, but none is found in the copies of the report introduced. Parol evidence was introduced tending to show that 35 years ago John L. Hinton, the same person called John Hinton in the petition for partition, the grandson of Hollowell Old, claimed to be the owner of the Gales tract, had an agent looking after, and forbidding trespassing, cutting timber, etc., and having tenants upon it. This was 40 years or more subsequent to his deed to Norfleet.

On December 16, 1763, Samuel Edney conveyed, by the same description contained in his grant of March 19, 1762, the 85 acres to

Thornton Gray. It is probable that the name of the grantee fixed upon the land the name "Thornton," by which it is in subsequent deeds referred to. No deed from Gray is found, but on November 30, 1787, Samuel Spence conveyed, by the same description contained in the grant, and specifically referring thereto, what he calls "World's End or Thornton's" to Benjamin Jones. It will be observed that Ben Jones took a grant for the Lebanon Company lands, within which this tract is. included, on July 10, 1787. On May 3, 1796, he conveyed by the description contained in the grant to Enoch Sawyer. He makes specific reference to this tract, which he also calls "World's End, or Thornton's." On July 13, 1801, Enoch Sawyer conveyed to F. B. Sawyer the same land, who, on October 13, 1809, conveyed to John Stanley. On December 16, 1850, Thomas Stanley and others, reciting that they are the heirs of John Stanley, conveyed this tract to John L. Hinton, the ancestor of defendants. This deed was proven and recorded April 6, 1909. It is conceded that Old Lebanon is, to a large extent, swamp.

It is claimed by defendants, and the evidence tends to sustain them, that the Gales and Thornton tracts are ridges, elevated above the surrounding lands; that they were capable of being cleared, inhabited, and cultivated; that the growth on them is of a different character from that on the surrounding land. There is undisputed evidence that many years ago people lived upon these tracts, built dwelling and farm houses upon them, and cleared and cultivated fields within their boundaries. The Thornton tract, after the conveyance to Stanley, was called "Stanley Island." The character of the land accounts for the entry and purchase of these small tracts at a very early date. The frequent change in the title, prices for which it sold, and other facts apparent from the deeds and parol evidence, show they had a distinctive status within the knowledge of those who sold and purchased them. Several very old persons testify that they have known and heard the 80 acres called "Stanley's Island," or "Thornton's," and the 281-acre tract "Gales," for more than 50 years. There is uncontradicted evidence that for many years a bridge was maintained across the swamp lying between the "Island" and the river, pine timber grew on the "Island," with signs of corn rows and apple trees; 25 or 30 acres had been in cultivation. One witness, 73 years old, says that he has known it as "Thornton's" or "Stanley's Island" for 40 years; has seen signs of a building on it; that it is "highland," well marked between the island and the river. W. C. Foster, 85 years old, has known the "Island" 50 years; had seen a part of a frame house on it, some fruit trees, and apple trees. Mrs. Charlotte Jones, 83 years old, had seen the bridge leading to "Thornton's" or "Stanley's Island" 65 years ago; was on it when about 13 years old; parts of an old house, scantling, etc., on the land; saw where the land had been cultivated—corn rows. These witnesses also testify that they have known the Gales tract many years; that people lived on and cultivated portions of it.

A careful examination of the evidence brings me to the conclusion that the two tracts in controversy have been well known and distinctly

separated from the surrounding swamp land, resided upon and cultivated by persons claiming under Hinton, defendant's ancestor.

[4-8] This brings us to the decision of the question whether these two tracts passed to Norfleet under the description contained in the deed from John L. Hinton March 1, 1854. Reference to a few rules, by which courts are guided in the construction of deeds, will aid in reaching a decision of this question. It is elementary that the court will endeavor to ascertain, and effectuate, the intention of the parties to the deed, and that such intention will be sought by reference to the language used by the grantor. If such language is of doubtful meaning, capable of more than one construction, that one will be adopted most favorable to the grantee, or, to state the rule affirmatively, doubtful language will be construed against the grantor. When a grantor, for the purpose of rendering a description of the property, otherwise uncertain or ambiguous, more certain, or for the purpose of pointing the grantee to the source from which a more particular or certain description may be found, refers to another deed or record, such deed or record so referred to will be treated as if embodied in the deed in which such reference is made, and the premises therein described will pass under it, as if written into the deed. 4 Am. & Eng. Enc. (2d Ed.) 803. In Everitt v. Thomas, 23 N. C. 252, Ruffin, C. J., said:

"We do not doubt that, by a proper reference of one deed to another, the description of the latter may be considered as incorporated into the former, and both be read as one instrument for the purpose of identifying the thing intended to be conveyed."

See Roper Lumber Co. v. Swain, 161 N. C. 566, 77 S. E. 700.

Hinton not only refers to the deed from Hamlin Epps, administrator, as the source from which he "derived title," but also refers to "the records of the register's office of Camden county." It is to these sources, therefore, that we must go to "identify the thing intended to be conveyed." Each of the deeds referred to are links in the chain of title, as if incorporated into his deed. In Ritter v. Barrett, 20 N. C. 266, Gaston, J., says:

"The very purpose of the reference would seem to be to ascertain with more particularity what it was apprehended might not have been otherwise sufficiently described."

The description of the land as "the Old Lebanon juniper swamp, lying in the counties of Gates and Camden, containing 5,000 acres," was ambiguous, uncertain, and, in the absence of parol evidence or some more definite description, difficult, if not incapable, of location. Recognizing this fact, plaintiff introduces the deed of Hamlin Epps and other deeds showing title in John L. Hinton.

It is also a well-recognized rule of construction that when a deed contains a general description, followed by a particular description of the premises granted, the latter will control the former, because, as said by Taylor, C. J., in Campbell v. McArthur, 9 N. C. 38, 11 Am. Dec. 738:

"The grantor has referred to [that patent] as the means of correcting any mistake in the description of the land, and of ascertaining what his intent was in making the deed."

The principle is well stated by Judge Walker in Gudger v. White, 141 N. C. 507, 54 S. E. 386:

"Where the description in a deed closes with a clause which clearly and unequivocally sums up the intention of the parties as to the particular property conveyed, such clause should have its proper effect upon all the antecedent phrases in the description, and is surely entitled to much weight in determining the true construction of the deed. * * * After all, the simple question is: What does the whole description show was * * * intended to be conveyed? When reading the deed, and looking at the facts and circumstances as they appear, what impression is left on the mind as to the purpose of the parties?"

Adopting the well-settled rule of construction, that every clause and part of the deed should be given force and effect as the parties must have intended, I am constrained to conclude that John L. Hinton, by describing the land which he conveyed "as the same tract of juniper swamp to which I derived title from Hamlin L. Epps, administrator and commissioner of Admiral Brinkley, deceased, reference to the records of Camden county North Carolina, will at large more fully appear," excluded the Thornton and Gales tracts, to which he not only did not derive title from Epps, administrator of Brinkley, but from an independent source, and under a title paramount to the title of those from whom Brinkley derived title to the Old Lebanon juniper swamp.

[9] It is insisted that the Thornton and Gales tracts cannot be located. Plaintiff alleges that:

It is the owner of the Old Lebanon swamp, "being the same which was on the 1st day of March, 1854, conveyed by John L. Hinton to James B. Norfleet by deed duly recorded, etc., * * * which is also embraced within the boundaries of the grant from the state of North Carolina to Benjamin Jones, dated July 10, 1788, and recorded in Register's Book D, page 353. That defendants have asserted an adverse claim to said land, and in an effort to take possession thereof have entered thereon and committed trespasses," etc.

The amended bill is substantially the same as the original bill, making reference to the same deeds.

Defendants admit that plaintiff is the owner of the lands described in the deed from their ancestor, John L. Hinton, to James B. Norfleet, and disclaim title to said lands, but deny that the lands which they claim, and of which they are in possession, are within the boundaries of said land conveyed to Norfleet by Hinton. The answer appears to be drawn upon the theory that the Thornton and Gales tracts are outside the boundaries of the Old Lebanon juniper swamp. They aver that they set up no claim or right, either as heirs or devisees of John L. Hinton or otherwise, to any of the lands conveyed by the said John L. Hinton to James B. Norfleet by deed as set out in section 3 of the bill. They also deny that they have gone upon any of the land described in the said deed. They aver that they own a tract of land adjoining the land described in the bill and are in possession of the same, and that they and those under whom they claim have been in possession thereof for 60 years. Repeating their disclaimer, they aver, in the sixth section of their answer, that they own the tracts of land known as Thornton and Gales, setting out their title thereto, "neither of which tracts are within the bounds of the tract of land conveyed by Hinton

to Norfleet." All of this in varying language is repeated in each paragraph in their answer, insisting that these two tracts are not within the boundaries of the land conveyed to Norfleet. If, by this language, defendants intend to aver that the tracts in controversy are situate outside the boundaries of the Lebanon swamp, it is manifest they are mistaken. If, however, they intend to say that, although within the boundaries of the large tract, they are not within the description contained · in the deed from Hinton to Norfleet, for the reason that he did not derive title to them from Hamlin Epps, I am of the opinion that they are correct.

The inquiry is presented whether the tracts in controversy are located with a reasonable degree of certainty. The description in the grants, assuming that the beginning is located, is amply sufficient. The grant for the "Thornton," or 85-acre tract, fixes the beginning "on the north side of Pasquotank river, near the head of a place called the World's End, beginning at a gum." There is evidence locating "Stanley's Bridge," leading to the foot of Stanley's Island; high land; the corn rows on the island are visible; it is now covered with pine timber; has been called "Stanley's Island" many years; swamp around it; signs of a house having been on it; gum on line, on the corner. The gum was 24 or 25 inches in diameter; since the war "might not have been over 20 inches." Colvin ran the line "one chain and some links" from there; he was surveying for plaintiff. His map. is in evidence. Witness J. T. Williams went with him around the lines; they took in the principal part of Stanley's Island. Witness is 65 years old. While of necessity the evidence locating a corner of a small tract of land of the character of "Thornton" or "Stanley Island" must be, to a degree, uncertain,. there is ample evidence, both oral and natural, that the boundaries were recognized by persons owning, living upon, and cultivating it. They were well known and recognized for very many years. The lines of demarcation separating the high or ridge land from the surrounding swamp are clear. One witness says:

"Stanley's Island is high land, and the lands surrounding it are low swamps; plainly marked, an old puncheon road leading up to Stanley's Island from the river, known as Stanley's Island Bridge; no marked trees were found by the surveyors in 1915; found an old line, brushed out, made five or six years ago by Colvin; found the gum to which Williams testified, 30 inches diameter, about 15 chains from the end of the Island."

Witness Cox thinks it about "75 or 100 years old." W. C. Foster, 85 years old, says that he was on Stanley's Island "during the war"; saw "a piece of frame house; it fell down; but on part of it there were some apple trees, fruit trees, walnut trees." Mrs. Charlotte Jones, 83 years old, says she has known Stanley's Bridge; "could not tell where it was, but could go and show you;" knows Stanley's Island—bridge leads to it; heard it called "Thornton"—65 or 70 years; was there twice; not quite grown when there; saw parts of an old house, few old apple trees, signs of plowed ground, and corn rows. There was other evidence by old persons of the same character.

The deed from Earl Granville for the Gales, or 281-acre tract calls as the beginning for "a gum on the west side of Juniper run, on the

north side of Pasquotank river, in the desert—St. Peters parish." The calls are for course and distance to trees, and refer to the "plan or map hereto attached." Plaintiff's witness, a surveyor who ran around this tract, says that, "taking the gum to be at the figure 1 on the plat, the lines correspond to the calls in the deed." J. T. Williams, for defendant. says that the gum (No. 1) was pointed to him by Newton Edney, some 50 years ago, as the beginning corner—as the Samuel Edney corner; that Mr. John K. Abbott, a surveyor, also pointed the gum to him as the beginning of the Samuel Edney land. Both are dead. There was evidence that the land had been cultivated; old corn rows; saw house on it. When he was a small boy, Hinton cut logs on the land. Witness was his agent, looking after the land, about 259 acres; forbade other people from cutting on it; people were cutting "in the bottom." The principal part of the tract was high land, surrounded by swamp. John L. Hinton went on the land. Witness laid off road on it for Hinton. Witness acted as agent until Hinton died, 1910; pointed out gum to Colvin, when he was making survey; also to Dudley; there were three chops on it; found three juniper stumps at end of first call; went with Colvin and Dudley when they ran around land. There was some juniper on the tract.

B. F. Spence, 70 years of age, has lived near the Gales land "all of his life"; raised within 3 or 4 miles of it; was employed by plaintiff 1868–69, cutting juniper, "not on the high land." John L. Hinton claimed to own the high land; was in possession of it; gave me permission to get white oak for making cart spokes on it. When witness was a boy there was a fence around the fields. Samuel Brothers lived on it; signs of cultivation. Jackie Brothers' field 25 or 30 acres. Sam Brothers' field was larger, on Gales run, within lines shown on map. J. W. Brothers, 74 years old, son of Sam Brothers, born above Gales run, said to be John L. Hinton's land. Father cultivated field on Gales' tract, Jackie Brothers was grandfather; cultivated field on land. It was called the Hinton land. Charity Turner, daughter of Sam Brothers, says that Hinton came to her father "about the rent." She was born and reared on the Gales tract.

There was much other evidence of the same character. There is evidence that plaintiff cut timber on the tract and Hinton objected. Hinton had some trees cut, but could not get them out. An adjoining owner objected to his carrying them across his land. It is manifest that, from the age of the deeds, the character of the land, the death of those who have owned and lived upon it, obscurity and uncertainty surrounds the subject-matter. I am of the opinion that there is evidence, if the cause was being tried by a jury, fit to be submitted to them on the question of location. I am further of the opinion that, as a matter of fact, the boundaries of the "two tracts are, with a reasonable degree of certainty, correctly located."

A decree may be drawn, dismissing the bill, at the cost of plaintiff.