## UNITED BRICK & TILE CO. v. McKISSICK et al.*
### No. 8923.

Circuit Court of Appeals, Eighth Circuit.
May 25, 1931.

STONE, Circuit Judge, dissenting.

H. M. Havner, of Des Moines, Iowa, and Flavel Robertson, of Kansas City, Mo. (B. J. Flick and Havner, Flick, Huebner & Powers, all of Des Moines, Iowa, and Baker, Botts, Parker & Garwood, of Kansas City, Mo., on the brief), for appellant.

*For opinion denying rehearing, see 52 F.(2d) 426.

W. B. Sloan, of Des Moines, Iowa (Paul H. Cunningham, of Des Moines, Iowa, on the brief), for appellees.

Before STONE and GARDNER, Circuit Judges, and WOODROUGH, District Judge.

WOODROUGH, District Judge.

This appeal is taken from a decree upon foreclosure of a conditional sale contract, in which decree the appellant is found to be personally liable for the debt established by the decree to be a lien upon the property covered. The appellant was not originally a party to the contract, but the court finds in the decree that the appellant became the purchaser of it through mesne conveyances and assumed to perform and to pay the balance of the unpaid purchase price. Appellant denies that it ever became personally liable on the contract, and the question is for review.

The contract is called the McKissick contract throughout the record, and bears date February 26, 1926. By its terms McKissick and others, owners of a brick and tile manufacturing plant including real and personal property, agreed to sell, and one La Fountain and others agreed to buy, the property upon installment payments specified. The vendors agreed to give conveyance upon receipt of the full purchase price. On December 23, 1927, the contract was assigned with the vendors' consent, and the assignee assumed and agreed to discharge all the obligations of the original purchasers. On the same day the vendors and the assignee entered into an amendatory agreement changing the forfeiture clause from a strict foreclosure to an Iowa statutory clause, and in the amendatory agreement the assignee repeated its assumption of all obligations. The assignee went into possession, and thereafter, on February 27, 1929, before default on the contract, involuntary petition in bankruptcy was filed against the assignee, and a receiver was appointed.

The receiver considered the property worth much more than the unpaid balance of the purchase price, and applied to the court for authority to enter into a proposed contract with the vendors and to make certain of the payments specified in the proposed contract, "in order to preserve the benefits of said contract for the estate in bankruptcy, without, however, adopting or assuming on behalf of the estate the covenants and obligations contained in said contract of sale dated February 26, 1926, as modified."

The court granted authority to the receiver as prayed, including in its order the pro-

viso: "Provided, however, that the receiver shall not adopt or assume said contract on behalf of the estate, nor assume any of the obligations or covenants contained in the contract of sale dated February 26, 1926."

By the terms of the contract so authorized and afterwards executed between the receiver and the vendors, additional time was given to pay certain installments then in default and other installments, and the contract was continued in force so long as the payments were duly made. It was also recited that the McKissick contract might be sold as part of the assets of the bankrupt estate, but without prejudice to vendors' rights "created or existing under and pursuant to said contract, except as herein or heretofore amended and modified."

While various defaults were made in the payments by the receiver and by the trustee who succeeded him after adjudication in bankruptcy, these were all waived. On October 27, 1928, the referee in bankruptcy ordered the trustee to sell at public sale all the properties of the bankrupt estate, including the McKissick contract. The incumbered property was ordered to be sold free of liens, but this contract was listed as a free asset, and the trustee was ordered to sell:

"M. All of the right, title and interest of the trustee in bankruptcy and the bankrupt corporation in and to: (1) A certain contract of sale for property known as the McKissick plant or plant No. 33, Carlisle, Warren County, Iowa, all as more fully described in Group I, Division E, of Part One of Paragraph (A) of this order containing the description of the property to be sold hereunder. The purchaser of said McKissick contract shall assume and indemnify the estate against all liability arising out of said contract as the court may determine."

The appellant through unquestioned agency made the high bid of $1,000 at the trustee's sale, the property was knocked down on that bid, the sale confirmed by the court, and transfer ordered. The conveyance was executed direct to appellant, and stipulates that the appellant "will pay and discharge in accordance with the provisions of said order of sale, the purchase price not heretofore paid of all the property sold in execution of said order of sale including all amounts which * * * under any * * * provisions of said order of sale and order confirming sale are to be paid by the purchasers in addition to the amount of the accepted bid for said property, as part of the purchase price thereof."

The appellant then went into possession of the property, and for a time fulfilled the obligations of the McKissick contract as to taxes, insurance, monthly installments, and interest payments; its remittances to the vendors specifying that they were "to apply on the purchase price of the plant" covered by the McKissick contract. In June of 1929, however, it wrote to the vendors declining to perform further, and shortly afterwards it tendered the keys of the plant back to the vendors. Whereupon the foreclosure suit was brought resulting in the decree for personal liability of which the appellant now complains.

▆▆▆▆ The bankruptcy sale at which appellant bought was a judicial sale, and appellant was clearly bound by the conditions of the order of sale and confirmation and the conveyance made pursuant thereto. The language of the order of sale, "The purchaser of the McKissick contract shall assume and indemnify the estate against all liability arising out of said contract as the court may determine," permits of no doubt of the intention of the court to require the purchaser to assume the obligations of the contract. There is nothing to which the requirement upon the purchaser that he "shall assume" could apply except those obligations. The requirement as to indemnity to be given by the purchaser is perhaps rendered somewhat ambiguous by the words "as the court may determine." It is not perfectly clear whether the court intended to leave open the question of kind and amount of indemnity or the whole question whether indemnity should be exacted. By the bankruptcy sale the trustee was passing over to the appellant for the sum of $1,000 a contract for the purchase of property on which contract the bankrupt owed some $93,000. That is the obligation which the purchaser at the bankruptcy sale was required to assume. It would be a very large amount to some purchasers, not as to others. There was no impropriety in leaving the matter of indemnifying the estate in regard to it for subsequent determination by the court. But the phraseology of the whole clause in the order of sale could not have deceived any purchaser into the belief that the trustee was offering the contract and possession of the plant with the whole matter of paying the $93,000 left open. The words "the purchaser shall assume" precluded any such contention. But, even if it should be considered that the appellant became, by the proceedings, a mere assignee of the contract, it does not follow that it could not impliedly undertake to assume the obligations imposed upon the purchaser by the original contract. While a simple assignment of a contract for the purchase of land or other property creates no personal liability in the assignee, by virtue of the assignment alone [Urban v. Phy (C. C. A. 9th) 24 F.(2d) 494; Potts v. Burkett (Tex. Civ. App.) 278 S. W. 471; Adron v. Evans, 52 S. D. 292, 217 N. W. 397, 59 A. L. R. 947 and note], yet the assignee may so act with reference to the other party or to the property, the subject-matter of the assigned contract, as to make himself personally liable for performance of the executory covenants thereof, which otherwise could be enforced only against his assignors. Senninger v. Rowley, 138 Iowa, 617, 116 N. W. 695, 697, 18 L. R. A. (N. S.) 223; Wightman v. Spofford, 56 Iowa, 145, 8 N. W. 680, 681; Union Pacific Ry. Co. v. Douglas County Bank, 42 Neb. 469, 60 N. W. 886; Oregon & Western Colonization Co. v. Strang, 123 Or. 377, 260 P. 1002; Kirby Lbr. Co. v. R. L. Lbr. Co. (Tex. Civ. App.) 279 S. W. 546.

In Senninger v. Rowley, supra, the Supreme Court of Iowa said: "True, there is no such assumption by the terms of the deed, but we see no good reason why it may not be established by evidence other than the conveyance. * * * It is also true that no witness testifies to such an agreement by appellant. But he did buy the land incumbered by the mortgage; paid interest thereon from year to year; secured a reduction in the rate of interest; paid a part of the principal and later gave a check for the computed remainder, and, although this paper was returned to him, its significance is none the less marked. In short, his entire conduct for a period of some fifteen years was consistent with the theory that he was and considered himself to be the debtor of the appellee and inconsistent with the attitude which he now assumes."

Again, in Wightman v. Spofford, supra, the Supreme Court of Iowa said: "The contract is assignable, and was assigned to Spofford by Townsend. It is not denied that Spofford accepted the assignment and claimed an interest under the contract. On the ground of his being the assignee he procured the quitclaim deed from Cassady. When Spofford accepted the contract as an assignee, and became clothed with all the rights conferred by it, he assumed all the obligations of his assignor." That the appellant did as a matter of fact understand it was taking over the McKissick contract with the obli-

gations therein specified is clearly demonstrated by its conduct. It took possession of the property, mortgaged it, insured it, paid taxes on it, removed some machinery and equipment from the plant, and made payments to the vendors which it specified were to "apply on the purchase price." These were all acts of ownership of the property evidencing an intention to pay in full—its determination not to pay for it is obviously an afterthought merely.

On the trial of the issue of personal liability, oral evidence consisting of a shorthand report of proceedings at the sale was received. It shows that, when the crier of the sale offered the McKissick contract, he made it clear that the purchaser would have to pay the balance of the purchase price called for by the contract. The appellant insists that the oral evidence, though a correct report, was not admissible, because the order of sale was the best and only evidence of the terms and conditions of the sale. As we find that the orders of sale and confirmation and the conveyance and the conduct of appellant fix upon it as purchaser the obligation to pay and perform according to the contract, we do not deem it necessary to pass upon the abstract question whether oral testimony should be received to explain the conditions of a bankruptcy sale. The appellant's agent at the sale did, however, participate in the colloquy with the crier at the sale, and the statements there made do corroborate the proof of appellant's understanding that it assumed the obligations of the contract.

Appellant also contends that the transactions between the bankruptcy receiver and the vendors worked such a change in the McKissick contract that it ceased to be a contract to pay the purchase price obligatory upon the purchasers named in it, or their assignees, or upon the appellant who bought it. We have carefully examined the record of the transactions, the letters, receiver's application for directions and authority, the court order and the contract, but do not find that the absolute obligation to pay the purchase price or to fulfill the other usual requirements specified in the contract were impaired.

It is true that, when the bankruptcy court ordered the McKissick contract to be sold, and when it was sold, and when the sale was confirmed, the description of the McKissick contract always included the words "as amended by the contract" made between the receiver in bankruptcy and the McKissicks. Appellant contends that, inasmuch as the

contract with the receiver in bankruptcy relieved the receiver from obligation to pay for the property, there was an amendment of the McKissick contract that took the promise to pay for the property out of the contract entirely. But there was no such purpose or intent of the receiver or of the McKissicks to so change the essential nature of the contract. The purpose of the deal with the receiver was simply to preserve the chance to sell the McKissick contract for the benefit of the trust without making the receiver himself a party to the contract, and obliged to buy and pay for the property. As the receiver was unwilling to and would not be the "party of the second part" in the McKissick contract himself, the identification of "the party of second part" (the buyer of the property) had to be and was suspended until the receiver or the trustee could find the purchaser at his sale. But, when the trustee made the sale, the purchaser immediately became identified as the party of the second part to the contract. The sense in which the contract was "amended" was that there was some postponement of due dates. But there was no amendment of the essential of the contract that the party of the first part promised to sell and convey, and the party of the second part promised to buy and pay for, the property. The receiver was permitted to preserve the contract, upon which the bankrupt and its assignor had expended large sums, as an asset of his trust without himself as receiver assuming the obligations. But it was to be sold, and was sold, without prejudice to the main right of the vendors to compel the buyer to pay for the property.

The appellant is liable on the contract, and, after the sale under the foreclosure, must respond to the deficiency, if any is found.

Affirmed.

STONE, Circuit Judge.

I find myself compelled to dissent. The vital point of cleavage between the majority of the court and myself is as to the effect upon the original contract (as it was when bankruptcy intervened) of the contract made with the receiver and of the effect of the orders made thereafter in connection with the sale by the trustee.

At the time bankruptcy intervened, the contract contained a clearly expressed obligation and liability upon the part of the bankrupt to continue the payments thereunder, and the contract provided the remedies by which that obligation and liability might be enforced. The receiver had a right to

accept the contract or to decline it. Appellees had the right to require him to elect, within a reasonable time, which he would do. The receiver desired to do neither absolutely, but to have the right to continue the payments without any legal obligation so to do. This desired result could be attained only by consent of appellees. There were somewhat extended negotiations between the receiver and appellees upon this subject. Finally, the receiver sent a proposed form of contract to appellees which was returned as unsatisfactory because "it contains no promise whatever on your [receiver's] part as to future performance and does not obligate the receivership to make the payments. * * *" The same letter from appellees contained their proposition which eliminated the above objection. The receiver declined to accept this form, saying, "Your contract specifically requires the receiver and any trustee that may be selected to continue the payments under the contract, while the form which Mr. Dickey [the receiver] submitted to you merely gives the receiver the right to do so. * * *" A contract was finally agreed to and was approved by the court. In the succeeding quotations from this contract and from the various subsequent court proceedings, I shall italicize portions which seem to me to show clearly that there was a modification of the contract (as it stood before the bankruptcy) by the contract with the receiver, and that it was this modified contract which was sold to appellant's assignors. It will be borne in mind that there had been but one amendment or change in the contract theretofore. This is important, because the word "amendments" is frequently used after the contract with the receiver, and the plural could refer to nothing else, since the contract with the receiver was the second and last contract. The contract with the receiver sets forth the existing defaults in the payments, provides for the extension thereof for three months, and provides that, "so long as said payments are made and continued by said receiver, the said contract shall remain in full force and effect except as modified by a certain agreement heretofore entered into on or about the 23rd day of December, 1927 [before the bankruptcy], *and except as modified by this contract."* It provides that, "in the event that there shall be or occur any failure to make any payment provided for in said contract of February 26th, 1926 as *herein amended and modified* or in the performance of any of the several covenants and agreements of the purchaser party to said contract of February 26th, 1926, *as amended and modified,* * * * the said Receiver or Trustee will consent to and not resist" an appropriate action "for the purpose of foreclosing or cancelling and terminating the certain contract of February 26th, 1926, *as amended and modified."* Also, it provides for sale (as part of the assets of the bankrupt estate) of the contract, "provided, however, that such sale shall be without prejudice to any right or remedy of first parties [appellees] created or existing under and pursuant to said contract, *except as herein* or heretofore *amended and modified."*

In the order approving the contract, the court found, inter alia, "that so long as payments are made said agreement heretofore entered into shall be continued in force *except as modified by the proposed contract,"* and ordered the receiver to execute the contract and to continue to make such payments until further order of the court.

From the above extracts from the contract with the receiver and from the order of approval it seems to me clear that the parties expressed the intention, and the court understood the intention to be, that the former contract was modified and amended by the contract with the receiver. If this be true, the only contract then in existence was the former contract as modified and amended by the contract with the receiver. Undoubtedly, that modification and amendment removed all *obligation* to continue payments, and confined appellees to taking back the property, if payments came in default. When it is considered that the total purchase price was $150,000, that $48,429.75 had been paid in principal, interest, taxes, and insurance by the bankrupt before the receiver made his contract, and that the appellees could take back the property, the incentive for appellees to make such a contract with the receiver is readily understood.

In my judgment, the court proceedings in connection with the sale of the contract further emphasize the verity of the above view of the effect of the receiver's contract. Prior to the order of sale, appellees filed a "Statement of Interest in Property," which stated their claim to title in the property (covered by the sale contract) as "subject only" to the original contract (February 26, 1926) "as amended by" the contract of December 23, 1927 *"and as further amended by agreement between claimants and Fred L. Dickey, as receiver,* * * * *made on or about February 21st, 1928."* It further states that "under and pursuant to the terms of said agreement of February 26th, 1926,

and said *amendments* thereto," certain payments had been made leaving unpaid certain sums, and that certain parts of the plant had been allowed to get out of repair. It then alleges:

"The claimants do not hereby and have not in any manner heretofore waived or relinquished any right or remedy existing on account of any breach of any condition, covenant or agreement of the purchaser parties under the terms of said agreement of February 26th, 1926, *and amendments thereto*.

"That any sale of the right, title and interest of the Trustee in Bankruptcy and the bankrupt corporation in and to said agreement of February 26, 1926, *and said amendments thereto* shall and must be without prejudice to any remedy or right of claimants created or existing under and pursuant to the said agreement of February 26th, 1926, *and said amendments thereto*."

The order of sale (in group I, division E of part 1 of paragraph A) was of "All of the right, title and interest of the trustee in bankruptcy and the bankrupt corporation in and to a certain contract of sale for property * * * which contract is dated February 26th, 1926 * * * and Amendatory Agreement * * * dated December 23, 1927, *and agreement* * * * *dated February 21, 1928* [the receivership contract], all as more fully set forth in said *contracts* to which reference is hereby made." In a later part of the order, under the title "Real Property Not Mortgaged," the description is:

"All of the right, title, and interest of the Trustee in Bankruptcy and the bankrupt corporation in and to:

"(1) A certain contract of sale for property known as the McKissick plant or plant No. 33, Carlisle, Warren County, Iowa, all as more fully described in Group I, Division E, of Part One of Paragraph (A) of this order containing the description of the property to be sold hereunder."

And in this connection is the statement: "The purchaser of said McKissick contract shall assume and indemnify the estate against all liability arising out of said contract as the court may determine."

The description of the property in the confirming order and in the conveyance of the trustee is identical with that first above quoted from the order of sale.

The repeated inclusion of and reference to the receiver's contract in the description of this property as contained in the order of sale, in the order confirming the sale and in the conveyance of the trustee, seem to me to be significant to the point of determining this controversy. What pertinency could such expressions possibly have had therein, unless the receiver's contract affected what was to be sold by the trustee? How could that contract affect the matter except in the one essential manner in which it modified the prior contract? That one manner was clearly to release from the obligation to continue the payments—such was the purpose and effect of the contract made by the receiver. The above recital of the terms of the receiver's contract and of what was done concerning this contract of the receiver is convincing that the parties did not merely suspend, during the bankruptcy, the theretofore existing contract, but that such prior contract was modified and changed for all purposes and as to all persons. The order of sale would have had no reason for mentioning or including the receivership agreement in its description of the contract to be sold if the entire efficacy of that contract was confined to the estate and ceased when the contract of sale passed from the estate, yet it would so cease if its purpose and effect were suspension and not alteration of the sale contract. If this be true, the trustee could not sell any other contract than the modified one, because no other contract existed.

Appellees attempt to avoid the above situation by introducing evidence of statements made by the auctioneer at the time of the sale to appellant under the order of sale. Their contention is that these statements were that the purchaser must assume the obligations of the contract. All of such statements were seasonably objected to by appellant. The language used is in some respects ambiguous because much of it might be applicable to either theory of the situation—he repeatedly speaks of the "burden" of the contract, which might have applied to the necessity of paying the unpaid balance in order to secure the property instead of meaning the assumption of a legal obligation to make such payments. However, he did say that the "receiver ratified those and took them up," so that a purchaser who had not familiarized himself with the contracts and the situation might *possibly* have gained the impression which appellees advance. The purchaser here represented the reorganization committee of the bondholders, and it is very improbable that he and the committee were not very familiar with this entire situation. Appellees insist that this parol evidence was admissible (1) "to explain and interpret" the or-

der of sale; and (2) "to show consideration." They urge, also, that no sufficient objection was made to the introduction thereof.

A provision of the order of sale was that "the purchaser of said McKissick contract shall assume and indemnify the estate against all liability arising out of said contract as the court may determine." Appellees contend that this language was ambiguous, and the parol evidence is competent "to see what the parties themselves did in putting a construction upon the language." This is not tenable. The language is not ambiguous. The estate could be liable for such "liabilities" only as were assumed; such assumption was solely through the contract of the receiver and the order approving that contract; neither that contract nor that order assumed any *obligations* of payment, but clearly and expressly negatived such assumption. There could be no ambiguity as to that situation. The "liability" of the estate could be only for payments coming due while it had the property and did not renounce it or for waste committed during such retention.

The contention as to consideration is that the parol evidence was admissible "to show the consideration for defendant's purchase of the contract." This is not well founded. No question of consideration is involved here. Appellant does not deny purchasing the contract—the dispute is as to what the purchased contract was.

The contention that there was no proper objection or exception to this evidence is of no practical value to appellees. This was tried as an equity case; this evidence was incompent to vary the terms of the order of sale so that a contract not in existence could be sold.

I think the decree should be reversed, with directions to dismiss the substituted bill with prejudice.