In re ROSECREST ENTERPRISES, INC., t/d/b/a The Pyramid, Debtor.

ROSECREST ENTERPRISES, INC., t/d/b/a The Pyramid, Plaintiff,

v.

HIGHLAND, INC., George Banks, and Arthur M. Balthrop, III, Defendants.

Bankruptcy No. 85–123.
Adv. No. 86–632.

United States Bankruptcy Court, W.D. Pennsylvania.

Nov. 23, 1987.

William H. Schorling, Eckert, Seamans, Cherin & Mellott, Pittsburgh, Pa., for debtor/plaintiff.

James A. Lewis, Rothman, Gordon, Foreman & Groudine, P.A., Pittsburgh, Pa., for defendants.

James G. Georgalas, Pittsburgh, Pa., for Lessor.

## MEMORANDUM OPINION

BERNARD MARKOVITZ, Bankruptcy Judge.

Presently before the Court is a *Complaint For Specific Performance,* or in the alternative, *Money Damages And Civil Contempt* brought by the Plaintiff, Rosecrest Enterprises, Inc. ("Debtor") against the Defendants, Highland, Inc. ("Highland"), George Banks ("Banks") and Arthur M. Balthrop, III ("Balthrop"), for their failure to purchase Debtor's assets as confirmed by a sale in this Court on January 22, 1986.

Defendants contend that said sale should be rescinded due to the failure of a condition precedent, i.e. that a lease be consummated between Highland and the Lessor. Plaintiff argues that no such condition existed, and demands that Highland be required to to perform the sale or provide compensation in lieu thereof. Plaintiff fur-

ther contends that Banks and Balthrop were the true purchasing parties to the sale; it asserts that the corporate veil should be pierced and that Banks and Balthrop should be held jointly and severally liable for Highland's contract.

Based upon the testimony received, the briefs prepared by the parties and this Court's own research, we determine that no condition precedent regarding a lease existed. We further find that circumstances do not exist which would permit the corporate veil to be pierced.

## FACTS

Prior to the filing of its Chapter 11 bankruptcy petition Rosecrest operated a restaurant and bar known as "The Pyramid". The postpetition Debtor was unable to operate at a profit and shortly thereafter ceased operation, seeking a purchaser of its assets. Balthrop, Debtor's president, and Banks, an outside third party, expressed an interest in purchasing same. Following lengthy negotiations, Debtor filed a Complaint To Sell its assets.

On or about May 27, 1985, Debtor filed an Amended Complaint, seeking approval to sell its property and a Motion To Enter Into An Operating Agreement with Highland, a corporation formed and owned by Banks and Balthrop. The Operating Agreement, along with the Assets Purchase Agreement, was negotiated between the parties, but never signed, and was incorporated by reference. The Agreement provided that Highland would operate the bar and restaurant pending the sale, and that said sale would be consummated upon the occurrence of certain conditions. These conditions included Highland's entering into a lease for the premises with the current Lessors and the transfer of the liquor license to Highland. Neither the Operating Agreement nor the Assets Purchase Agreement were ever authorized by this Court.

Between May 22, 1985 and January 16, 1986, Highland, Banks and Balthrop negotiated with the Pennsylvania Minority Business Development Authority ("PMBDA") and the Urban Redevelopment Authority ("URA"), secured creditors of the Debtor, for Highland's assumption of said indebtedness. At the time of the sale, PMBDA, URA, Highland, Banks and Balthrop had reached a tentative agreement, whereby Balthrop agreed to personally guarantee the indebtedness, and Banks agreed to pledge a certificate of deposit to secure repayment of the indebtedness. During this same period Debtor, Highland and Debtor's Lessor continued to negotiate a lease for the premises.

On the date of the sale, Highland and the Lessor had not reached an agreement on the terms of a new lease. Nonetheless, the advertisement of the sale, Plaintiff's Complaint to sell the property, the record of the hearing confirming the sale and the Order itself contained no contingencies for the sale *except* the transfer of the liquor license. It was clearly stated at the confirmation hearing that the sale was "as is—where is", and no contingencies existed regarding the lease. In fact, Debtor's counsel specifically outlined the purchaser's options of: 1) assuming the lease and curing the default; 2) entering into a new lease with the Lessor; or 3) removing the property from the leased premises.

This Court confirmed a sale of all Debtor's assets, except certain causes of action, to Highland on January 22, 1986. The Order required Highland to pay Debtor $12,000.00 for the liquor license and to assume the indebtedness owed by Debtor to PMBDA and URA, which exceeds over $130,000.00.

Subsequent to the sale Order, Highland continued to operate the business; however no satisfactory lease agreement was negotiated between Highland and the Lessor, and consequently, Highland took no action to transfer the liquor license. In September of 1986, Highland closed the bar and restaurant and refused to pursue further negotiations with the Lessor or to consummate the sale. This Court has received no adequate accounting as to the profit or loss of the business; however, when the premises were abandoned, they were left in filth and disarray; several pieces of Debtor's

property, including a grand piano, were missing.

Highland filed a Motion For Determination of The Validity of the Assets Purchase Agreement and Operating Agreement, seeking to rescind the transaction based on the failure of the purchaser to consummate a lease. On or about September 16, 1986, Debtor filed the instant action.

## ANALYSIS

■■■ The Court is the actual vendor in a bankruptcy sale and only upon confirmation of the Court does the purchaser acquire any rights in the sale property. *In re A.H.R.S. Coal Corporation,* 8 B.R. 455 (Bankr.W.D.Pa.1981); *See also, In re Blue Coal Corporation,* 59 B.R. 157 (Bankr.M.D.Pa.1986) The Court's decree of sale specifically describes the property to be sold and once entered, it is controlling upon the parties; their rights and obligations are fixed thereby, and they have no authority to deviate from the provisions of the Order. Accordingly, the purchaser is bound by the language of the Order. *U.S. v. Branch Coal Corporation,* 390 F.2d 7 (3rd Cir. 1967); *In re United Toledo Company,* 152 F.2d 210 (6th Cir.1945); *American Dirigold Corporation v. Dirigold Metals Corporation,* 125 F.2d 446 (6th Cir.1942); *United Brick & Tile Company v. McKissick,* 51 F.2d 67 (8th Cir.1931).

■■■ In the present case the advertisement of the sale, the record of the sale confirmation and the Court's Order confirming the sale contain only one condition precedent: the transfer of the liquor license. The record clearly indicates that a lease was not a condition of the sale; rather, the sale was "as is—where is". It would totally defeat the purpose of a judicial sale both generally and specifically in the case at bar, "to permit the successful high bidder to later come in and contend that he had private assurances or an understanding that he would be receiving something more in the way of assets than what was specifically described in the call of sale for the information of all other bidders." *In re Dartmouth Audio, Inc.,* 42 B.R. 871, 874 (Bankr.D.N.H.1984). The record of the

sale confirmation expressly states that Highland had not yet reached an agreement with the Lessor concerning a lease of the premises. It was explicitly clear that Highland's dealings with the Lessor were a separate matter to be worked out between those parties and not subject to incorporation in the Court's Order. This sale was confirmed over objections made by the landlord regarding the absence of such an agreement. The Court stated that the sale would go forward and voiced the hope that the parties would work out their problems. Thus, it was clearly not this Court's intention to make the sale conditional upon the parties reaching a lease agreement.

Highland argues that the Assets Purchase Agreement, negotiated between the parties and attached to Plaintiff's Complaint to Sell, provides the actual terms of the sale. The Assets Purchase Agreement does propose the existence of a lease between Highland and the Lessor as a condition precedent to confirmation. However, Debtor's Complaint itself states only that the sale terms include assumption of the debt with PMBDA and URA and $12,000.00 in cash. Nowhere therein is it stated that the conditions of the sale were those in the Assets Purchase Agreement.

Finally, even if the parties had so desired, it is not possible for a trustee or debtor in possession to sell a lease; the lease must first be assumed and assigned with a showing of adequate assurances for future performance. 11 U.S.C. § 365(f)(2)(B). *See also, In re Dartmouth Audio, Inc., supra.* Since Debtor had not assumed the lease at the time of the sale, it lacked the authority to transfer it to Highland and could not incorporate such a transfer as a condition precedent to the sale.

Debtor also contends that Highland is the alter ego of Defendants Bank and Balthrop; and that consequently, the corporate veil should be pierced, rendering Highland's principals jointly and severally liable. Any analysis in this area must begin with the general principle that "... the corporate entity should be recognized and upheld unless specific, unusual circumstances call

for an exception." *Zubik v. Zubik,* 384 F.2d 267, 273 (3rd Cir.1967), *quoted in American Bell Inc. v. Federation of Telephone Workers of Pennsylvania,* 736 F.2d 879 (3rd Cir.1984).

This Court has previously held the following factors relevant in determining the propriety of disregarding a particular corporate identity:

1) gross undercapitalization of the corporate entity;

2) failure of the corporate principals to observe standard corporate formalities;

3) nonpayment of corporate dividends;

4) siphoning of corporate funds by the dominant stockholder or stockholders;

5) nonfunctioning of other significant officers and/or directors;

6) an absence of corporate records; and

7) the fact that the corporation is merely a facade for operations of the dominant stockholder or stockholders.

*See In re B.D.W.,* 75 B.R. 909 (Bankr.W.D. Pa.1987).

■ Banks and Balthrop were the sole officers of Highland and both actively performed in such capacities. While the accounting of the business operations was inadequate, and financial records indicating profit and loss are unavailable, there is no concrete evidence that either Banks or Balthrop was siphoning funds from the corporation. Lack of dividends is not an applicable factor in the present situation as the corporation operated for only eight (8) months and apparently never made a profit. Highland does appear to have been undercapitalized and is presently insolvent. Said financial condition, after only eight months of operation, is evidence of initial undercapitalization; yet there is evidence that Banks and Balthrop repeatedly injected personal funds into the corporation in order to continue operating the business. Highland and its principals also made capital improvements to the property while it was under their operation. These financial injections evidence an intent by Banks and Balthrop to make the corporation profitable.

Debtor contends that Highland failed to observe corporate formalities; however, the record shows that Highland did comply with administrative filing and record-keeping requirements. Nonetheless, Debtor asserts non-compliance because Defendants dealt with third parties in their individual capacities and under the name of "The Pyramid" (Debtor's fictitious name) rather than under the name of Highland. This assertion cannot be satisfactorily sustained. Initially, the testimony showed that much of the motive behind Highland's purchase of Debtor's assets was retention of the good will associated with the name "The Pyramid". Therefore, Highland had a legitimate business reason to use this fictitious name in dealing with third parties. Furthermore, Debtor knowingly dealt with Highland in its corporate capacity, fully realizing that Highland was formed solely for the asset purchase. Debtor cannot now assert the propriety of Highland's dealings with third parties as a reason for piercing the corporate veil.

It is conceded by Highland's principals that the corporation was formed solely to acquire and operate the bar and restaurant. However, this is a legitimate business purpose, and in fact, Debtor was formed for exactly the same exclusive reason four (4) years earlier. Further, Highland was never deceitful in representing its reasons for incorporation. We therefore, cannot find that the corporation was merely a "facade for the operations of its dominate stockholders."

In this case, the Court does not find the requisite unusual circumstances needed in order to pierce the corporate veil. Although the corporate entity can also be disregarded, if used to defeat "public interest, justify wrong, protect fraud or defend crime," *Kellytown Company v. Williams,* 284 Pa.Super. 613, 426 A.2d 663 (1981), no compelling facts exist in the case at bar to indicate that Highland's formation was aimed at such a purpose. In the absence of such findings, Highland's undercapitalization and its principals' dealings with third parties in their individual capacities do not justify the piercing of the corporate veil to

satisfy Debtor's judgment. Therefore, Debtor must look solely to Highland for fulfillment of its obligations.

An appropriate Order will be issued.