In re PIZAZZ DISCO &
SUPPERCLUB, INC.,
Debtor.

James A. PROSTKO, Trustee, Plaintiff,

v.

Morris M. RAND; MRGB, Inc.; Robert Wunker, Esquire; and Blackwell, Walker, Fascell and Hoehl, Defendants.

Bankruptcy No. 87–3345.
Adv. No. 88–0545.

United States Bankruptcy Court,
W.D. Pennsylvania.

May 16, 1990.

Bernhard Schaffler, Schaffler & Bohm, Pittsburgh, Pa., for defendants Morris Rand and MRGB, Inc.

James A. Prostko, Trustee, Phillips & Galanter, P.C., Pittsburgh, Pa., pro se.

Robert Wunker, Blackwell, Walker, Fascell and Hoehl, Miami, Fla., former counsel to Morris M. Rand.

Ronald T. Conway, Michael F. Fives, Conway & Fives, Pittsburgh, Pa., for debtor.

## MEMORANDUM OPINION

BERNARD MARKOVITZ, Bankruptcy Judge.

Before the Court is a Complaint by Plaintiff James A. Prostko, Esq. ("Trustee") for damages as a result of a violation by Defendants Morris M. Rand and MRGB, Inc. of an Order of Court confirming the sale of Debtor's business and assets to MRGB.[1]

The Trustee avers that Debtor was ready and willing to consummate the sale and that Rand and MRGB have, without justification, refused to do so, in violation of the valid and Final Order of Court.

Defendants Rand and MRGB contend that Debtor fraudulently misrepresented what assets were to be sold and that, as a consequence, they were entitled to rescind the agreement to purchase Debtor's business and assets. Defendant Rand further denies that he violated the Order of Court for the reason that said Order named only MRGB and not Rand as "buyer".

The issues before the Court appear to be three-fold, to-wit:

### (1) Is There a Valid Sale?

This Court answers that question in the affirmative, as The Honorable Judith K. Fitzgerald executed a Court Order on May 31, 1988 confirming the sale in question. Said Order was transmitted to Defendants and no appeal was taken from same; therefore, that issue is resolved.

### (2) Is There a Basis To Vacate The Sale?

This Court answers that question in the negative. Defendant Rand knew what he was purchasing, as his agent, George Blacke, was placed upon the premises well prior to the sale. Said agent thoroughly inventoried the items to be sold, and was confident that said items or comparable items were incorporated into the agreement of sale executed by Buyer, Defendant Morris Rand, and Seller, Debtor–in–Possession.

No credible evidence of fraud was offered. Defendants' eleventh hour offer of a UCC–1 search was rejected as a surprise on the Plaintiff and because Defendants obvious lack of information made its probative value *de minimis.*

### (3) Against Whom Is The Court Order Enforceable?

This Court determines from the evidence offered at trial, including the statements of Defendant Morris Rand's counsel, which were offered in open court and the testimony and exhibits offered at trial, that the Order is enforceable against both Defendants Morris Rand and MRGB, Inc.

In accordance with the reasoning set forth below, judgment will be entered for the Trustee and against Defendants Rand and MRGB in the amount of $1,155,339.70.

## JURISDICTION

Jurisdiction over this action is conferred upon this Court by 28 U.S.C. § 1334 and 28 U.S.C. § 157, as this action is a core proceeding.

Venue is proper in this judicial district pursuant to 28 U.S.C. § 1409.

## FACTS

Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code on December 3, 1987.

At the time of the filing, Debtor owned and operated a disco and supperclub under the names "Pizazz" and "Vegas", respectively, in Fort Lauderdale, Florida. They were housed in the same building and

---

**1.** On February 23, 1989, the Court entered an Order approving a stipulation to dismiss with prejudice Count II of the Complaint, in which the Trustee sought to recover $100,000.00 which Defendants Robert Wunker, Esq., and the law firm of Backwell, Walker, Fascell and Hoehl held in escrow pending the closing of the sale of Debtor's business and assets to Morris Rand and/or MRGB, Inc. The Order further provided that said Defendants were to hold the money in a market investment account pending further Order of this Court.

shared a common kitchen. Pizazz opened for business in August of 1986. Vegas opened for business in March of 1987.

Debtor leased space for its operations from J.J. Gumberg Company. The sound and lighting equipment for the two clubs were leased from Banc One Leasing under two separate leases. The lessee of the equipment in both instances was Jayson and Associates, another corporate entity owned by Thomas Jayson, a principal of the debtor in this case. Jayson and Associates in turn assigned its rights as lessee to Debtor once Debtor had been incorporated.

Debtor's facility underwent considerable remodeling subsequent to the filing of the bankruptcy petition. Pizazz was converted to an under–21 club. Vegas was converted to a disco and renamed "Chauncy's". These conversions necessitated substantial changes in the furniture and equipment at the clubs.

In September of 1987, approximately three (3) months before Debtor filed its petition, Thomas Jayson began efforts to sell Debtor's business and all of its assets.

In January of 1988, Jayson was contacted by a real estate broker who represented that he had a client who might be interested in purchasing Debtor's business and assets. Shortly thereafter, Jayson met with the broker and various members of the Blacke family and subsequently showed them the clubs on several different occasions. Although it was contemplated that Morris Rand would be designated "buyer" and provide the funding for this purchase he was not present at these preliminary meetings with the Blackes.

In late-March or early-April of 1988, Jayson met personally with Morris Rand and Robert Wunker, Rand's attorney, to discuss the purchase of Debtor's business and assets by Rand. On April 5, 1988, Rand wrote a letter to Jayson in which he expressed his intention to purchase Debtor's business and assets in accordance with terms and conditions to be set forth in an agreement of sale to be executed at a later time. On April 7, 1988, Defendant Rand's lawyer caused a letter to be transmitted to counsel to both Debtor and Thomas Jayson.

The letter was to introduce Rand and the Blackes to the lessor J.J. Gumberg Company by providing information as to their business backgrounds. The letter stated, among other things, that Rand would "be providing the capital for the venture"; that Rand had an unleveraged net worth in excess of $10 million dollars; that the Blackes had substantial experience in the night club business; and that they (the Blackes) would manage and operate the business. The obvious purpose of the letter was to allow the landlord to know he was dealing with responsible individuals and to pave the way toward an assumption of the lease.

On April 19, 1988, Defendant Morris Rand, designated purchaser, and Jayson, in his capacity as President of Debtor, designated seller, executed an agreement of sale. The agreement provided that Rand would purchase Debtor's business and all of its assets, as listed on an inventory sheet dated November of 1987. The agreement further provided, *inter alia*, that Rand could, subject to approval by the Court, assign his rights and interests to a third party.

The Blackes were involved in verifying the accuracy of the inventory sheet attached to the agreement of sale. They, along with Jayson, inventoried all of the equipment and furnishings in the clubs on at least two (2) separate occasions prior to execution of the agreement of sale, and appeared confident that the equipment to be sold, or comparable equipment, was in fact located upon the premises.

On April 28, 1988, Debtor submitted an amended motion for approval of sale of its business and assets to a joint venture known as MRGB, Inc., Morris Rand's assignee. ("MRGB" was an acronym derived from the initials of Morris Rand (MR) and George Blacke (GB).) MRGB determined to be in possession of Debtor's business and assets prior to confirmation of the sale by the Court. As a consequence, Debtor entered into a management agreement with MRGB, wherein MRGB was to become the exclusive manager of the clubs and was to

pay the rent for May of 1988 directly to the landlord.

On April 26, 1988, the landlord submitted a motion for relief from stay. On May 1, 1988, the Blackes assumed operational control of Debtor's business. On May 4, 1988, Debtor submitted a motion for authority to enter into a management agreement with MRGB to operate Debtor's business pending confirmation of the sale by the Court.

Several hearings on these various motions were held by the Court. The first hearing was held on May 19, 1988, wherein Robert Wunker, Esquire entered his appearance and was an active participant on behalf of Defendant Morris Rand. Additional hearings on the above motions were held on May 24, 1988 and May 31, 1988, respectively, wherein counsel represented and testified on behalf of Defendant Morris Rand.

At the conclusion of the hearing held on May 31, 1988, the Court requested that all interested parties collaborate in drafting a proposed Order of Court setting forth agreed-upon terms of sale. A proposed Order was submitted to the Court later that day. After review and minor modification, the Court confirmed the sale in question to MRGB, Inc. for the consideration of $1,250,000.00. The sale included Debtor's business and all of its assets, including Debtor's interest in leasehold property, furnishings, name, furniture, fixtures, equipment, goods, and existing liquor license, as set forth in the same inventory sheet that was attached to the agreement of sale executed by Defendant Morris Rand on April 19, 1988. Of the total sale proceeds, $1 million was to be paid in cash at the time of closing, with the remaining $250,000.00 to be credited to purchaser upon its assumption of the Banc One leases. The Order specifically provided that MRGB would *not* be granted credit for the rental payment it had made for the month of May of 1988; however, an administrative claim could be submitted to assure reimbursement of this expense.

The Order was duly docketed and served upon all parties in interest, including Defendants herein. No appeal was ever taken from the Order of Court issued on May 31, 1988 confirming the sale.

On June 1, 1988, counsel to Defendant Morris Rand advised Debtor and others, by letter, that MRGB was unwilling to close on the sale. The sole reason given at that time was that the Order of Court confirming the sale did not grant MRGB a credit against the purchase price for the rental payment it had advanced for May of 1988. Defendant offered no complaint relating to the assets purchased or the quality of title to the equipment present on the premises as of that date.

After the period for appealing the Order of May 31, 1988 had expired, Defendant Rand's counsel notified Debtor's counsel that there was a problem with the light and sound equipment at the clubs. The Blackes, who had been in control of the clubs since May 1, 1988, claimed that certain items which had been listed on the Banc One leases were not on the premises. This was the first indication of a purported problem of this nature. In an effort to close the deal, Debtor–in–Possession offered items of personalty in addition to those contained in the agreement of sale. This offer of Debtor–in–Possession to give more to Defendant than it had bargained for was rejected. As the April 19, 1988 agreement required Debtor to desist from any further efforts to secure a purchaser and, as no other buyers were available when this transaction failed, Debtor was caused to ceased operations and close its doors.

On June 21, 1988, James Prostko was appointed Chapter 11 Trustee. On June 28, 1988, the case was converted to Chapter 7 and Prostko was retained as Chapter 7 Trustee.

On September 1, 1988, October 6, 1988, and June 1, 1989, sales were held wherein Debtor's assets were sold in an effort to secure funds to the benefit of the Debtor's creditors and, in an effort to mitigate damage. A total of $94,660.30 was secured as a result of these sales.

## ANALYSIS

■ The Court is the actual vendor in a bankruptcy sale. The purchaser acquires

rights in the property sold only upon confirmation by the Court. *In re Rosecrest Enterprises, Inc.*, 80 B.R. 354, 356 (Bankr. W.D.Pa.1987).

■ Once an Order confirming a sale is entered, it is binding on the parties. Their rights and obligations are fixed thereby, and they are not permitted to deviate therefrom. The purchaser is bound by the Order. *Id.*

In light of the foregoing, it is clear that MRGB had an obligation to purchase Debtor's business and assets and that its refusal to do so was in violation of the Order of May 31, 1988.

MRGB counters that it is not in violation of the Order because Debtor committed fraud. According to MRGB, Debtor was cognizant that it was not in a position to sell what it purported to be selling. It alleges that Debtor fraudulently represented that it was selling all of its assets when it knew that some of the light and sound equipment listed on the inventory sheet was missing or had never been purchased. In addition, MRGB alleges that some of the equipment in the clubs was already encumbered by security interests which Debtor had not revealed.

Both of these contentions by MRGB are without merit.

### A) *Fraudulent Misrepresentation*

Federal Rule of Civil Procedure 8 applies in adversary proceedings in this Court. Bankruptcy Rule 7008(a).

■ Fraud is an affirmative defense. *See* FED.R.CIV.P. 8(c). One who pleads an affirmative defense in effect admits the truth of the allegations in the Complaint, but nevertheless asserts facts which, if proven, exculpate the defendant and defeat recovery. *Fleming v. Kane County*, 636 F.Supp. 742, 749 (N.D.Ill.1986); *U.S. Home Corp. v. George W. Kennedy Construction Co.*, 610 F.Supp. 759, 761 (N.D.Ill. 1985).

■ The burden of proving an affirmative defense is upon the party asserting it. *Martin v. Weaver*, 666 F.2d 1013, 1019 (6th Cir.1981), *cert. den'd*, 456 U.S. 962, 102 S.Ct. 2038, 72 L.Ed.2d 485 (1982); *Jones v. Taber*, 648 F.2d 1201, 1203 (9th Cir.1981).

Under Pennsylvania law, fraud must be proved by clear and convincing evidence. *Chrysler Credit Corp. v. First National Bank and Trust Co. of Washington*, 746 F.2d 200, 208 (3rd Cir.1984).

The elements of fraud are as follows. There must be:

(1) a misrepresentation;

(2) a fraudulent utterance thereof;

(3) an intention by the maker that the recipient will thereby be induced to act;

(4) justifiable reliance by the recipient upon the misrepresentation; and

(5) damage to the recipient as the proximate result.

*Delahanty v. First Pennsylvania Bank*, 318 Pa.Super. 90, 464 A.2d 1243, 1252 (1983).

■ Careful review of the evidence presented persuades this Court that MRGB has failed to establish, by clear and convincing evidence, the affirmative defense of fraud with respect to either of the allegations of fraud which it has raised.

With respect to the first allegation of fraud—i.e., that Debtor was cognizant that some of the equipment listed on the inventory sheet was missing or had never been purchased—MRGB has, at the very least, failed to establish that:

(1) Debtor misrepresented which light and sound equipment it was selling;

(2) MRGB reasonably relied upon the inventory sheet attached to the agreement of sale and Order of May 31, 1988; and

(3) MRGB was damaged as the proximate result.

There was no misrepresentation by Debtor concerning the light and sound equipment which MRGB was purchasing. MRGB understood that it was purchasing all of the light and sound equipment in the clubs at the time of the agreement of sale and was equally aware of what equipment was there at that time. Defendants' agents had visited the clubs several times and had personally inventoried the light and sound equipment on at least two (2)

occasions prior to the time when Rand executed the agreement of sale. Clearly, Defendant knew what it was purchasing.

Any reliance by MRGB, if indeed there was any reliance, upon the inventory sheet was unjustified for much the same reason. MRGB understood that it was purchasing the light and sound equipment in the clubs as of April 19, 1988, and knew the specifics relating thereto. There was no detrimental reliance.

Finally, MRGB also has failed to demonstrate that it was damaged in any way by any purported fraudulent misrepresentations by Debtor concerning the light and sound equipment. It is not disputed that the items listed on the inventory sheet do not correspond completely with those items in the clubs as of April 19, 1988. All parties knew that the inventory sheet had not been compiled in connection with the sale of Debtor's business and assets to Morris Rand. Rather, it had been compiled prior to the opening of Pizazz and Vegas at the request of Banc One in connection with the leases Banc One previously had granted to Jayson and Associates. It was understood that many items on the inventory sheet were not in the clubs as of April 19, 1988 for various reasons. Certain items on the sheet were never purchased due to their unavailability or due to design changes in the clubs. Substitutions were made for these items. Still other items had been removed and replaced with different equipment when Pizazz and Vegas underwent remodeling.

Although certain light and sound equipment listed on the inventory sheet (or their equivalents) were not in the clubs as of April 19, 1988, there was *additional* equipment in the clubs which was not listed on the inventory sheet. The value of the latter ($157,000.00) exceeded the value of the former ($92,952.00) by $64,128.00. Had MRGB gone forward with the sale, it stood to acquire equipment which was worth more than what was listed on the inventory sheet. All of this was clearly known to Defendants as a result of their quasi-management position, as well as their detailed inventory. To complain at this late date suggests a manufactured defense to avoid compliance with a legal duty. The arguments lacks credibility.

MRGB also has failed to establish the second allegation of fraud—i.e., that Debtor failed to disclose that certain light and sound equipment, which replaced other equipment, was fully encumbered by security interests.

Debtor was one of many businesses owned or controlled by Thomas Jayson. At various unspecified times, Jayson removed light and sound equipment from the clubs and replaced it with equipment belonging to other companies which he controlled.

MRGB failed to establish the preliminary matter that any of the replacement equipment in the clubs at the time of the agreement of sale was encumbered by security interests. It attempted to establish this by eliciting testimony concerning a UCC-1 search conducted in one (1) county in Pennsylvania under the names of several companies controlled by Jayson and then comparing the equipment so listed with the equipment in the clubs.

MRGB's proof on this preliminary matter would have been and/or was fatally deficient in two respects.

To begin with, Jayson controlled numerous companies in many and various locations. MRGB could not demonstrate that it had conducted UCC-1 searches under the names of every company controlled by Jayson, as they lacked the information basic to that search. Any last minute surprise testimony would carry unfair prejudice well beyond its probative value. Even if admitted and considered as true, the light it would cast would be of little value.

In addition, by this 11th hour testimony, Defendants could not establish that any equipment owned by other companies controlled by Jayson, and which may have been subject to a security interest, was included among the items in the clubs. The generic descriptions attached to the inventory made this connection impossible. Nothing resembling fraud has been proven by clear and convincing evidence to this trier of fact.

## B) *Judicial Estoppel*

The Order of May 31, 1988 confirmed the sale to MRGB, not to Morris Rand. Even so, Rand is liable for any violation of the Order to the same extent as is MRGB. Rand is judicially estopped from arguing, as he does, that he is not liable for any violation of the Order because it authorized the sale to MRGB, not to him. Legal sleight of hand will not make this specious defense available to him.

In essence, the doctrine of judicial estoppel provides that a party who has asserted a position may not later on be heard in the same court to contradict himself in order to establish a totally inconsistent position. *National Union Electric Corp. v. Matsushita Electric Industrial,* 498 F.Supp. 991, 1012 (E.D.Pa.1980). That party may be precluded (or estopped) from asserting the inconsistent position in the second proceeding. *Erie Telecommunications, Inc. v. City of Erie,* 659 F.Supp. 580, 588 (W.D.Pa. 1987); *Wade v. Woodings–Verona Tool Works, Inc.,* 469 F.Supp. 465, 476 (W.D.Pa. 1979).

Judicial estoppel is a doctrine which prevents a party from playing "fast and loose" with the court. *Lawrence v. United States of America I.C.C.,* 629 F.Supp. 819, 822 (E.D.Pa.1985). The object of the doctrine is to protect the judiciary, as an institution, from perversion of the judicial machinery. *Edwards v. Aetna Life Ins. Co.,* 690 F.2d 595, 599 (6th Cir.1982).

The doctrine applies if a party has *successfully* asserted an inconsistent position in a prior proceeding. *City of Kingsport v. Steel & Roof Structure, Inc.,* 500 F.2d 617, 620 (6th Cir.1974). This means that the party must have been successful in persuading the court to accept its position in the prior proceeding. *Edwards, supra* at 599. "Acceptance" in this context requires only that the court adopted the position urged by the party in the prior proceeding, either as a preliminary matter or as part of a final disposition. *Edwards, supra* at 599, n. 5.

The doctrine of judicial estoppel is applicable to Morris Rand in the present adversary proceeding.

A hearing was held on Debtor's motion to approve the sale of its business and assets on May 19, 1988. At that hearing, several creditors objected to the proposed sale because MRGB, and not Rand, was to be the purchaser. The Court also expressed concern that Rand was not to be the purchaser and would not guarantee Debtor's lease with J.J. Gumberg Company.

Robert Wunker, who appeared at the hearing as Rand's attorney, confirmed that Rand would not guarantee the lease. He further represented, however, that MRGB would not be a shell corporation, that Rand would provide the $1 million in cash for MRGB's purchase, and that Rand was willing to go forward with the purchase on that basis.

The implication of these representations, as understood by the Court, was that Rand, while not purchasing Debtor's business and assets *in his own name,* was in reality purchasing them *on behalf of MRGB.* As the result of Rand's attorney's representations, creditors withdrew their objections to the sale to MRGB and participated in drafting the Order which the Court signed on May 31, 1988. More importantly, the Court ultimately relied on these representations by Defendant Morris Rand's attorney in confirming the sale to MRGB instead of insisting that Rand fulfill his obligation pursuant to the April 19, 1988 agreement. Absent these representations, the sale to MRGB would not have been confirmed. Absent Rand's representations, Rand personally would have been required to comply with his commitment of April 19, 1988.

To argue, as Rand does, that he is not liable as the result of MRGB's refusal to consummate the sale because MRGB, and not he, is the purchaser is inconsistent with his earlier position. This attempt at sophistry is an affront to the integrity of the judicial process. Consequently, he is judicially estopped from maintaining this position in the present adversary proceeding.

## C. *Damages*

The Trustee is entitled to recover as damages the sale price as set forth in the

Order of May 31, 1988 ($1,250,000.00) less the net realized from the three (3) sales conducted, which sum totaled $94,660.30.

The total amount of damages is $1,155,-339.70 and is arrived at as follows:

Sale price per 05/31/88
Order of Court    $1,250,000.00

Three Judicial Sales    $21,961.57
9,398.73
63,300.00

$94,660.30

Recoverable Damages    $1,155,339.70

An appropriate Order will be entered.

### ORDER OF COURT

AND NOW at Pittsburgh in said District this 16th day of May, 1990, in accordance with the accompanying Memorandum Opinion, it is ORDERED, ADJUDGED and DECREED that judgment is entered in favor of Plaintiff James A. Prostko, Trustee, and against Defendants Morris M. Rand and MRGB, Inc. in the amount of $1,155,339.70.

IT IS FURTHER ORDERED that Defendants Robert Wunker, Esquire, and Blackwell, Walker, Fascell & Hoehl distribute the sum of $100,000.00 plus accrued interest, which sum presently is being held in a market investment account, to Plaintiff James A. Prostko, Trustee.