**In re Eugene L. DOEMLING, t/a Walnut Street Properties; and Regina A. Doemling, Debtors.**

**Bankruptcy No. 88–2103–BM.**

United States Bankruptcy Court,
W.D. Pennsylvania.

Aug. 2, 1993.

See also 127 B.R. 954, 127 B.R. 945.

567

Bernhard Schaffler, Dickie, McCamey & Chilcote, P.C., Pittsburgh, PA, George A. Conti, Greensburg, PA, for debtors.

Phillip S. Simon, Davis Reilly, P.C., Pittsburgh, PA, for U.S. Nat. Bank in Johnstown.

Mark L. Glosser, Stone, Glosser & Stone, Pittsburgh, PA, for Committee of Unsecured Creditors.

## MEMORANDUM OPINION

BERNARD MARKOVITZ, Bankruptcy Judge.

United States National Bank of Johnstown ("USNB") has objected to debtors' second amended plan of reorganization, which in essence merely distributes a stated *res* pursuant to the bankruptcy priorities. USNB asserts that it has a secured rather than an unsecured claim and that it should be treated accordingly in debtors' plan. It further asserts that the plan cannot be confirmed as it violates many of the requirements of the Code such as proper classification of claims and feasibility. According to USNB, it is a secured creditor and not an unsecured creditor, and suffi-

cient funds with which to pay it as a secured creditor and to pay other creditors pursuant to the plan will not be available.

Debtors concede that the proposed plan is not feasible *if* USNB is treated as a secured creditor. They further concede that if USNB is secured in the *res*, the case must be converted to chapter 7. However, they argue that USNB is "judicially estopped" from asserting in this proceeding that it has a secured claim. Also, debtors argue that USNB should not be entitled to receive distribution in satisfaction of its claim because property which is subject to USNB's mortgage was sold to satisfy another judgment held by USNB against debtors.

The objection of USNB will be sustained. Debtors' second amended plan of reorganization will not be confirmed. The above-captioned case will be converted to a chapter 7 proceeding.

- I -

FACTS

On December 20, 1982, debtor Eugene Doemling executed a promissory note in favor of Equibank in the amount of $345,000.00 plus interest.

As security for the note, Eugene Doemling at that time also executed a mortgage in favor of Equibank on real property located at the intersection of Abbott and Mary Streets in Derry Township, Westmoreland County, Pennsylvania. The mortgage was duly recorded.

Debtors also executed a document on December 20, 1982, wherein they personally guaranteed payment of the above obligation.

Equibank assigned all of its rights under the note, the guarantee, and the mortgage on September 6, 1985 to USNB, which then recorded the assignment.

On September 12, 1985, Eugene Doemling, doing business as Walnut Street Properties, executed a promissory note in favor of USNB in the amount of $310,000.00 plus interest.

As security for the note, Eugene Doemling at that time also executed a mortgage in favor of USNB on real property located at 118 West Fourth Avenue, Derry Township, Westmoreland County, Pennsylvania. The mortgage was duly recorded.

Eugene and Regina Doemling also executed a document on September 12, 1985, wherein they personally guaranteed payment of the note.

On February 8, 1988, USNB confessed judgment against both Doemlings in the Court of Common Pleas of Westmoreland County, Pennsylvania, at No. 888 of 1988. The judgment was based on the guarantee the Doemlings had executed on December 20, 1982 and was in the amount of $310,379.62 plus interest.

That same day—i.e., on February 8, 1988,—USNB also confessed judgment against Eugene Doemling in the same court at No. 889 of 1988. This judgment was based on the guarantee debtors had executed on September 12, 1985 and was in the amount of $359,449.89 plus interest. No action relating to the mortgages or their foreclosure was instituted.

On June 22, 1988, a praecipe for a writ of execution was issued on the judgment against Eugene Doemling at No. 889 of 1988. It directed the Sheriff of Westmoreland County to sell the property located at 118 West Fourth Avenue *and* the property located at Abbott and Mary Streets in satisfaction of the judgment. The properties were scheduled for sheriff's sale on September 6, 1988.

Debtors filed a voluntary joint chapter 11 petition on August 8, 1988, thereby staying the sheriff's sale of the properties.

Schedule A–2, Creditors Holding Security, listed USNB as having a secured claim in the amount of $317,968.20 with respect to the property located at 118 West Fourth Avenue. The claim was based on the mortgage executed on September 12, 1985.

Schedule A–2 also listed USNB as having a secured claim in the amount of $266,288.32 with respect to the property located at Abbott and Mary Streets. This claim

was based on the mortgage executed on December 20, 1982.

No indication was given by debtors in the schedules that these claims were contingent, unliquidated, or disputed.

In addition, the schedules gave no indication that USNB's claims also were based on the above confessed judgments. In their statement of financial affairs, however, debtors did acknowledge the above confessed judgments in the amounts stated in their schedules. They also acknowledged these judgments in a motion to assume executory contracts and to sell real property (at Motion No. 88–5440M) and in their amended plan of reorganization.

Schedule B–1, Real Property, indicated that debtors owned seventeen (17) parcels of real property. Fifteen (15) of those properties, including the two for which USNB was mortgagee, were located in Westmoreland County.

On September 29, 1988, USNB filed a motion (at Motion No. 88–586M) for relief from stay and/or for adequate protection. USNB asserted that it held mortgages on the above two properties. It further asserted that its interest in the properties was not adequately protected and denied that debtors had any equity therein. In its prayer for relief, USNB sought termination of the automatic stay "as it affects the interest of Movant in the aforesaid properties".

Debtors opposed the motion. They admitted the existence of the two mortgages but denied that USNB was not adequately protected and insisted that they had equity in the properties. The hearing scheduled for October 14, 1988 was postponed at the request of the parties with no evidence being offered. The hearing was rescheduled for December 9, 1988.

During the negotiations in the interim, counsel to USNB had submitted a proposed order to debtors' counsel which made reference to "foreclosures". The final version of the *oral* consent order which thereafter was submitted to the court on December 9, 1988 contained no such reference. The parties outlined their agreement to the court and advised that a consent order would be submitted forthwith.

A consent order, which had been jointly prepared by debtors and USNB, was submitted and entered on February 23, 1989. The order states in pertinent part as follows:

.... it is hereby **ORDERED, ADJUDGED** and **DECREED** that the automatic stay be and hereby is terminated as it affects the interest of United States National Bank in Johnstown in property known and numbered as Abbott and Mary Streets, Derry, Pennsylvania 15627 and 118 W. 4th Avenue, Derry, Pennsylvania 15627; provided however, that the debtors may bring sales of such properties, based upon private offers and/or by courtroom auction, in this Court notwithstanding termination of the automatic stay. Debtors shall file appropriate sale motions pursuant to the foregoing jurisdictional reservations for sales, not later than April 1, 1989.

The order contained no stipulated facts. No additional evidence was offered to the court aside from the fact that no one else was adversely affected and the parties having an interest agreed to the order.

Another praecipe for a writ of execution at No. 889 of 1988 was issued in state court on February 27, 1989. The praecipe directed the prothonotary to re-issue the writ of execution and declared that the amount due and owing was $395,865.46, which included interest through May 1, 1989.

The properties were scheduled for sheriff's sale on May 1, 1989 in the event that debtors did not file motions to sell the above two properties by April 1, 1989.

Debtors did not file such motions with this court. Accordingly, the properties in question were sold to USNB at a sheriff's sale on May 1, 1989 for the sum of $14,-636.00, costs and taxes. The sheriff's deed issued to USNB was duly recorded by it.

USNB subsequently sold both properties to third parties for valuable consideration. It sold the 118 West Fourth Avenue property on April 16, 1991 for the sum of $180,-000.00. It sold the Abbott and Mary

Streets property on June 21, 1991 for the sum of $172,000.00.

USNB did not commence a deficiency proceeding against debtors with respect to the judgment entered at No. 889 of 1988.

At some undisclosed time after it had purchased the two properties on May 1, 1989, USNB sent to Eugene Doemling two Forms 1099–A pertaining to the acquisition or abandonment of secured property.

During the course of this bankruptcy case, debtors sold thirteen (13) other parcels of real property, twelve (12) of which are located in Westmoreland County. Each motion to sell property located in Westmoreland County listed the above confessed judgments among the liens against the properties. The orders submitted and entered confirming the sales stated that the liens against the properties henceforth attached to the sale proceeds.

Approximately $283,500.00 remains from the sales of these thirteen properties. These funds, which constitute net sales proceeds, are to be distributed to creditors in accordance with the plan of reorganization.

Debtors submitted a second amended disclosure statement and a second amended plan of reorganization on October 12, 1992.

The disclosure statement, which was approved on January 18, 1993, asserts that the purpose of the second amended plan is "to provide for an orderly receipt and distribution of all remaining assets, if necessary, or at least as much of the assets as may be necessary to satisfy all creditors in full without interest".

The disclosure statement indicates that debtors presently have available for distribution to creditors the sum of $300,160.00. This amount is being held in several bank accounts and includes $283,500.00 in net proceeds realized from the sale of debtors' other properties. The disclosure statement also indicates that an additional $48,035.66 in *potential* assets may be available for distribution under the plan. These assets,

unlike the bank accounts, are not presently available and are only projected.

The disclosure statement also estimates the valid claims against the estate to be as follows:

| | |
|---|---|
| Administrative Expenses | $142,000.00 |
| Priority Claims | 134,297.90 |
| Secured Claims | 82.00 |
| General Unsecured Claims | 65,100.00 |
| | $341,479.90 |

Article II of debtors' second amended plan divides all claims into four (4) classes. Class One consists of allowed administrative claims. Class Two consists of allowed tax claims, "whether liened or unliened". Class Three consists of remaining unpaid secured claims "which were transferred to proceeds of sales". Class Four consists of allowed general unsecured claims, "including allowed balances due to unsatisfied secured creditors after sales of respective secured assets".

Article III provides that Class One and Class Two shall be paid in full at confirmation or upon entry of final, nonappealable orders approving such claims. The balance of available funds will be distributed to Class Three "pro rata". The plan fails to provide for treatment of Class Four claims.[1]

Article V states that Class One, Class Two, and Class Three are unimpaired and that Class Four "may be impaired if remaining funds cannot achieve payment in full without interest".

Article VII states that "[a]ll cash on hand will be used to pay the respective classes. Remaining funds, if any, will revert to the Debtors".

Article VII further states:

[i]n the event insufficient cash is available to satisfy claims, the Committee of Unsecured Creditors (whose counsel will continue as such) shall be vested with all unliquidated or unrealized assets and

---

1. It is possible that the treatment of Class Three and Class Four are reversed through "typographical error". However, a substantial period of time has elapsed and no correction has been submitted. This "error" has no affect on the decision rendered herein.

shall prosecute, settle, collect and distribute funds as and when available.

On March 4, 1993, USNB objected to the second amended plan of reorganization. USNB asserted that it was a secured creditor by virtue of the unsatisfied judgment at No. 888 of 1988. It further asserted that the proposed plan is not confirmable because it is not feasible. According to USNB, insufficient assets are available to pay Class One, Class Two, and Class Three (including USNB).

That same day—i.e., on March 4, 1993—, USNB filed a proof of claim in which it asserted a *secured* claim in the amount of $302,721.77. Its claim is based on the unsatisfied confessed judgment entered at No. 888 of 1988. USNB asserts in its proof of claim that it has a lien on the net proceeds realized from sales of other properties located in Westmoreland County as a result of the orders confirming those sales, which provided that any liens would attach to sales proceeds.

On March 5, 1993, USNB voted *as a member of Class Three* to reject the second amended plan of reorganization.

The ballot summary submitted by debtors indicates that Class One and Class Two, which are unimpaired, did not vote and are presumed to have voted to accept. Class Four also voted to accept the plan. As for Class Three, the claimant having a claim in the amount of $82.00 did not vote. As has been noted, USNB voted as a member of Class Three to reject the plan. Debtors deny that USNB is a member of Class Three.

A plan confirmation hearing was held on March 12, 1993. The court did not confirm the plan at that time and instead granted debtors time to respond to USNB's objection.

On March 22, 1993, debtors responded to the objection. They argued that USNB should be judicially estopped from asserting in this proceeding that it has a secured claim by virtue of the unsatisfied confessed judgment at No. 888 at 1988. According to debtors, USNB deliberately misled them and the court into believing that it intended to bring mortgage foreclosure actions, rather than an action on only one of the confessed judgments, if it was granted relief from stay.

An evidentiary hearing on debtors' second amended plan and USNB's objection thereto was held on June 28, 1993. Thereafter, the parties submitted a joint stipulation of facts and an appendix from which the above-recited facts have been derived.

## - II -

### ANALYSIS

The following matters are not in dispute: that USNB was listed in debtors' bankruptcy schedules as holding undisputed secured claims against debtors' estate by virtue of the mortgages; that the confessed judgments at No. 888 of 1988 and No. 889 of 1988 operated as liens against all of debtors' real property located in Westmoreland County; and that these liens attached to the proceeds realized from sales, in this court, of debtors' other properties located in Westmoreland County.

USNB asserts that it has a secured claim against debtors by virtue of the confessed judgment at No. 888 of 1988 and therefore is a member of Class Three of debtors' second amended plan. Furthermore, because it is a secured creditor, debtors' plan is not feasible and hence is not confirmable.

Debtors have *conceded* in the joint stipulation of facts submitted by the parties that their proposed plan is not feasible if USNB is a member of Class Three—i.e., holds an allowed secured claim.[2] Their counsel further conceded at hearing on June 28, 1993 that conversion to chapter 7 was unavoidable if USNB's objection to the plan is sustained. Debtors argue, however, that

---

**2.** Paragraph 18 of the joint stipulation reads as follows:

> If the Bank's aforesaid assertions are found to be valid by this Honorable Court, the plan is not feasible because the Debtor has insuffi-

cient funds to pay the secured claim of United States National Bank, and to pay administrative claims estimated to be $142,000.00 and priority claims estimated to be $134,297.00.

USNB is judicially estopped from asserting that it has a secured claim.

According to debtors, USNB deliberately misled them and the court to believe that it sought relief from stay in order to bring mortgage foreclosure actions, not to execute on only one of the two confessed judgments. Neither the motion nor the consent order, debtors point out, makes reference to judgments. Also, debtors claim that during negotiations aimed at drafting the consent order, USNB's counsel faxed a proposed order to their counsel which made reference to "foreclosures".

Moreover, once relief from stay was granted, debtors "had hopes" either of "satisfactory foreclosures" or that USNB would initiate deficiency proceedings against them pursuant to the Deficiency Judgment Act. When debtors were not served with notice of a deficiency proceeding, they aver they "reasonably assumed" that USNB had elected not to recover any deficiency from them. Sometime thereafter, however, it sent Eugene Doemling Forms 1099–A which, debtors allege, allocated the deficiency between the two properties. This, debtors insist, is "totally inconsistent with.... [USNB's] failure to invoke the State deficiency statute".

Debtors have not relied solely upon judicial estoppel in responding to USNB's objection to their plan. They also argue in their post-hearing brief that USNB's right to look to the bankruptcy estate for satisfaction of the claim arising out of the judgment at No. 888 of 1988 somehow legally "has been destroyed".

### A) Judicial Estoppel.

▮ Judicial estoppel is designed to prevent a party from playing "fast and loose with the court". *In re M.J. Shoearama, Inc.*, 137 B.R. 182, 189 (Bankr.W.D.Pa. 1992). It is meant to protect the judiciary, as an institution, from perversion of its process. *Id.* The primary purpose of the doctrine is to protect the integrity of the court, *not* to protect litigants. *See In re Cheripka*, 26 CBC2d 385, 398, 1991 WL 276289 (3d Cir.1991).

▮ The doctrine of judicial estoppel precludes a party from asserting a position in a judicial proceeding which is inconsistent with a position previously asserted by it. *See Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 419 (3d Cir.), *cert. denied*, 488 U.S. 967, 109 S.Ct. 495, 102 L.Ed.2d 532 (1988). A party who has asserted a position may not later on be heard to contradict itself in order to establish an inconsistent position. *See In re Pizazz Disco & Supperclub, Inc.*, 114 B.R. 104, 110 (Bankr.W.D.Pa.1990). That party may be estopped from asserting the inconsistent position in the latter proceeding. *Id.*

▮ Judicial estoppel applies only if a party has ***successfully*** asserted an inconsistent position in a prior proceeding. *Id.* This means that the court must have been persuaded to ***accept*** its position in the prior proceeding. *See In re Cheripka*, 26 CBC2d at 397–98. Acceptance in this context requires only that the court adopted the position either as a preliminary matter or as part of a final disposition. *See In re Pizazz*, 114 B.R. at 110.

▮ Debtors' contention that USNB's conduct judicially estops it from now asserting that it has a secured claim by virtue of the judgment at No. 888 of 1988 is devoid of merit.

▮ What ***debtors*** may have been led by USNB to believe or what they reasonably may have inferred from its words and actions (or inaction) cannot give rise to judicial estoppel. As has been noted, this principle serves to protect the court as an institution. It does ***not*** serve to protect ***litigants*** from allegedly improper or deceitful conduct by an adversary. *See In re Cheripka*, 26 CBC2d at 398. At the hearing, no evidence was offered indicating USNB acted inappropriately and, to the contrary, they have denied any sharp dealing. All actions were taken in face-to-face communications or set forth on public records. Had any trained person taken the time to review the official record, the plain facts and legal theories would be available to the parties.

■ In any event, it does not matter, *for purposes of judicial estoppel,* whether USNB deliberately misled debtors into believing that it intended to initiate foreclosure actions when in fact it intended to execute only one of the confessed judgments. It also does not matter whether it deliberately misled debtors to believe that it had decided not to pursue any deficiency judgment against them.[3]

Even if USNB did what debtors accuse it of with the intention of deliberately misleading them[4], its conduct does not give rise to judicial estoppel because it was directed at debtors, not at the court. Judicial estoppel applies only when a party has played "fast and loose" with the court. *See In re M.J. Shoearama,* 137 B.R. at 189.

■ There is an additional reason why these alleged representations by USNB do not give rise to judicial estoppel in this proceeding.

As has been noted, judicial estoppel applies only when a party has taken a position in a given proceeding which is inconsistent with a position it successfully has asserted in a prior proceeding. *See Oneida Motor Freight,* 848 F.2d at 419.

USNB has asserted in the present proceeding that it is a secured creditor by virtue of the lien arising from the confessed judgment at No. 888 of 1988. This position is *not* inconsistent with the "position" allegedly asserted earlier (to debtors) that it intended to initiate foreclosure proceedings upon being granted relief from stay. It also is *not* inconsistent with the "position" allegedly asserted (to debtors) after it was granted relief from stay that it would not institute deficiency judgment actions against debtors. If these positions indeed are somehow inconsistent, for purposes of judicial estoppel, with the position now asserted by USNB, debtors have not shown them to be so.

For judicial estoppel to apply in this instance, it can do so only because USNB played "fast and loose" *with the court* by successfully asserting a position in a prior proceeding which was accepted by the court and which is inconsistent with its present position that it is secured by virtue of the judgment at No. 888 of 1988.

The only alleged conduct identified by debtors which involves the court pertains to USNB's motion for relief from stay and the consent order which was entered. According to debtors, USNB misled the court into believing that it sought relief from stay in order to bring mortgage foreclosure actions against the two properties when in fact it intended to execute on only one of the confessed judgments.

The contention that this gives rise to judicial estoppel must fail for a variety of reasons.

■ There is no indication that USNB ever asserted such a position before this court when it sought relief from stay. The fact that USNB, as debtors point out, was silent about its intention to execute on one of the confessed judgments does not, under the present circumstances, rise to the level of an "assertion" that it intended not to execute on the confessed judgment.

Moreover, even if USNB did make such an "assertion", this court did not rely upon nor did it accept the assertion when it entered the consent order.

Finally, as has been noted, such an assertion is not inconsistent with USNB's position in this proceeding that it is a secured creditor by virtue of the confessed judgment at No. 888 of 1988.

Debtors' strident insistence that judicial estoppel applies in this instance betrays a lack of understanding of the doctrine. USNB is *not* judicially estopped from now asserting that it is a secured creditor and therefore is a member of Class Three of

3. To say that such conduct "does not matter" is not to condone such conduct, assuming that it occurred. It is only to say that such conduct is not relevant when considering whether the doctrine of judicial estoppel is applicable.

4. No determination need be made as to whether USNB's conduct in this respect was "inconsistent" and, if it was, whether it was intended to mislead debtors.

debtors' second amended plan of reorganization.

### B) Has USNB's Claim Been "Destroyed"?

■ Although debtors did not raise the matter in their responsive pleading to USNB's objection to the second amended plan, they have hinted at an extremely enthymematic argument in their post-hearing brief which seems to have as its intended conclusion that the claim of USNB arising out of the judgment at No. 888 of 1988 somehow legally "has been destroyed". This argument will be addressed, *out of an abundance of caution,* notwithstanding that it was raised for the first time after the hearing.

Much of the argument is left unstated. As far as the court can glean, the argument goes as follows:

When USNB purchased at sheriff's sale the property subject to the mortgage executed on December 20, 1982—i.e., the Abbott and Mary Streets property—, either it took the property *subject to its own mortgage* or the mortgage *merged* with its title to the property. Persuasive authority for either alternative has not been provided.

Debtors opined that if USNB took the property subject to its own mortgage, the subsequent third-party purchaser of the property also took it subject to USNB's mortgage. Accordingly, USNB should be compelled by the doctrine of marshalling to "seek satisfaction of the mortgage out of the mortgaged property" before it receives distribution from proceeds realized from sales of debtors' other properties.[5]

If, on the other hand, the mortgage merged with USNB's title to the property, "retirement of the mortgage should retire the judgment on it [i.e., on the mortgage] by the aforementioned merger considerations".

As has been noted, the property located at Abbott and Mary Streets, as well as the other property, were executed upon as a result of the judgment entered at No. 889 of 1988. The conclusion that the claim based upon the judgment at No. 888 of 1988 somehow "has been destroyed" as a result of the execution on the judgment at No. 889 is unfounded,

This argument *might* have some merit had the judgments at Nos. 888 and 889 of 1988 been judgments in foreclosure based on mortgages. They were *not* judgments in foreclosure, however, but were instead confessed judgments based on personal guarantees debtors had executed contemporaneously with the mortgages.

■ A judgment in foreclosure is a judgment *de terris*—i.e., against the land. It imposes no *personal* liability on a mortgagor who executed the mortgage. *See Meco Realty Co. v. Burns,* 414 Pa. 495, 497, 200 A.2d 869, 871 (1964). The judgments at Nos. 888 and 889 of 1988, by contrast, are *in personam* judgments against Eugene and/or Regina Doemling. *See Artisti–Kote Co. v. Beneficial Building & Loan Ass'n,* 64 F.2d 407, 408 (3d Cir.1933).

Sale of the properties located at Abbott and Mary Streets and at 118 West Fourth Avenue in satisfaction of the judgment at No. 889 of 1988 has no effect on the *personal* liability of debtors as a result of the judgment at No. 888 of 1988. Because the obligation arising out of the judgments at Nos. 888 and 889 of 1988 are *in personam* obligations, it makes no difference whether the mortgage in question merged with USNB's title or whether USNB took title subject to the mortgage. Satisfaction of the debt at No. 889 of 1988 had no effect on the *in personam* obligation at No. 888 of 1988.

Nothing has transpired since the commencement of this case which has the effect of taking away the secured status of USNB's claim which debtors themselves conceded in the schedules appended to their bankruptcy petition and in various motions they have submitted in this case.

5. The "marshalling" argument, which was raised for the first time in the post-hearing brief, fails to note that the properties were sold, the amount received deducted from the debt, and that USNB avers additional sums due and owing.

### C) Feasibility.

 Debtors' concession that their proposed plan is not feasible, and therefore not confirmable, if USNB is treated as secured creditor belonging to Class Three, is warranted by the facts.

As has been noted, debtors presently have only approximately $300,000.00 available for distribution. Another $48,035.66 is *potentially* available but is not certain. This latter amount is *not*, however, presently available.

The plan provides that Class One—i.e., administrative claims—and Class Two—i.e., allowed tax claims—are to be paid in full at confirmation.

Debtors have estimated that Class One claims amount to $142,000.00 and that Class Two claims amount to $134,297.90. USNB has filed a proof of claim in the amount of $302,721.77. The total amount of these claims, all of which are payable in full at confirmation, is approximately $580,000.00, and exceeds the funds presently available for distribution by some $280,000.00.

The plan makes no provision for funding by debtors from future income. Although it does make nebulous reference (in Article VII) to future activities by the Committee of Unsecured Creditors to prosecute, settle, collect, and distribute funds as they become available, it is questionable what, if anything, this will mean to debtors' estate. It is clear, however, that such funds, assuming they ever materialize, are not presently available to pay Class One, Class Two, and Class Three in full at confirmation.

USNB's objection to debtors' second amended plan will be sustained. The plan will not be confirmed.

An appropriate order shall be issued.

### ORDER OF COURT

AND NOW at Pittsburgh this 2nd day of August, 1993, in accordance with the accompanying Memorandum Opinion, it hereby is **ORDERED, ADJUDGED** and **DECREED** that United States National Bank in Johnstown's objection to debtors' second amended plan of reorganization be and is **SUSTAINED.**

IT IS FURTHER **ORDERED, ADJUDGED** and **DECREED** that the above-captioned case is hereby converted to a proceeding under chapter 7.