In re KENILWORTH SYSTEMS
CORP., Debtor.

Andrew M. THALER, Chapter 7 Trustee
of the Estate of Kenilworth Systems
Corporation, Plaintiff–Appellee,

v.

Herbert LINDO, Defendant–Appellant,

and

Jeffrey Lindo, Sandra Flynn and P &
J International, Ltd., Defendants.

Nos. 882–82273–20, 95 CV 2885 (NG).

United States District Court,
E.D. New York.

Feb. 7, 1997.

Jeanne M. Farnan, Pryor & Mandelup, LLP, Westbury, New York, for Trustee.

Kenneth Cooperstein, Centerport, New York, for Defendant–Appellant.

## OPINION AND ORDER

GERSHON, District Judge:

This is an appeal under 28 U.S.C. § 158(a) of a decision issued in an adversary proceeding in the U.S. Bankruptcy Court for the Eastern District of New York. Defendant–Appellant Herbert Lindo appeals from that part of a June 13, 1995 order, issued by U.S. Bankruptcy Judge Robert J. Hall, which expunged Mr. Lindo's claim against the estate of the debtor in the underlying bankruptcy action. Judge Hall's decision was based upon an order issued in that action that contains a release of "any and all claims" that Mr. Lindo had asserted or might assert against the estate of the debtor.

## FACTS

The bankruptcy action from which this adversary proceeding arises was filed by the debtor, Kenilworth Systems Corporation ("Kenilworth"), in 1982. Judge Hall presided over the Kenilworth bankruptcy from its inception.

Kenilworth was a computer software firm that had developed a "cashless wagering system" for use in video gambling. Mr. Lindo was the president of Kenilworth. In February 1992, along with his son, Jeffrey Lindo, and another business associate, Mr. Lindo, while still the president of Kenilworth, formed CashTek Corporation ("CashTek"), of which he also became president.

According to a Form 10 securities registration disclosure filed with the Securities and Exchange Commission on July 6, 1992, CashTek planned "to acquire and exploit exclusive and non-exclusive licenses" held by Kenilworth on software that the latter had developed. Form 10 at p. 1. The Form 10 also noted that Kenilworth and CashTek had entered into an agreement on September 24, 1991 whereby CashTek was granted "an exclusive, irrevocable worldwide license ... for use of all systems and technologies of Kenilworth." *Id.* at p. 3. Mr. Lindo executed this licensing agreement on behalf of both Kenilworth and CashTek.

On June 4, 1992 Mr. Lindo was indicted in the United States District Court for the Western District of Michigan for violations of the federal securities laws arising from his role in the sale of unregistered Kenilworth securities in 1987 and 1988. On June 17, 1993 he was convicted of three felony counts. His sentence included the imposition of a $600,000 fine.

Plaintiff–Appellee Andrew Thaler ("the Trustee") had been appointed Trustee of the Kenilworth estate by Judge Hall on November 25, 1991. Pursuant to 11 U.S.C. § 363, on October 6, 1992 the Trustee issued a Notice of Proposed Sale setting forth the terms of the sale of Kenilworth's assets to CashTek and announcing that a hearing regarding the proposed sale would be held before Judge Hall on October 29, 1992. This notice was sent to Mr. Lindo, as well as to numerous creditors of Kenilworth and other interested parties.

The hearing was continued to November 18, 1992. Mr. Lindo attended the November 18th hearing in person, as did Abraham Backenroth, Esq., counsel for CashTek. A central issue at the hearing concerned potential claims that the Kenilworth estate might face should the sale to CashTek be approved by Judge Hall. Mr. Lindo himself spoke at the November 18th hearing and explicitly endorsed a waiver of claims in the following terms:

> We stated that if we are the purchaser of the debtor's assets we would not make any claims against the Court.

November 18, 1992 Hearing Transcript at p. 83.

On November 20, 1992, pursuant to Judge Hall's direction, the Trustee submitted a proposed sale order that attempted to memorialize the terms of sale as modified by the results of the November 18th hearing. The proposed order included a release of the claims of CashTek, Mr. Lindo and his son against the Kenilworth estate. On November 24, Mr. Backenroth wrote a letter to Judge Hall asserting that the Trustee's proposed order was inconsistent in several respects with both the rulings made at the November 18th hearing and with the terms of CashTek's offer to buy Kenilworth's assets. Attached to the letter was a proposed "counter-order," which purportedly corrected the Trustee's errors. One of the alleged inconsistencies was set forth in the letter as follows:

> The third item which is inconsistent with the offer relates to a provision requiring a waiver and release of all claims by Cash-Tek, Herbert Lindo and Jeffrey Lindo.

The offer however, only waives rights by CashTek against the proceeds of sale which are being segregated for the purposes of paying creditors.... The counter-order submitted accurately reflects that provision of the offer.

November 24, 1992 Letter at p. 3.

On January 8, 1993, Judge Hall issued a sale order approving the sale of Kenilworth's assets to CashTek ("the Sale Order"). Rejecting the counter-order's proposal, the Sale Order contained the following release of claims ("the Release") against the Kenilworth estate:

> **ORDERED,** that CashTek, Herbert Lindo and Jeffrey Lindo, hereby release the bankruptcy estate and the Trustee from any and all claims and causes of action, and withdraw any and all claims each has asserted or may assert in the bankruptcy case; ...

January 8, 1993 Sale Order at p. 2.

Neither the Lindos nor CashTek appealed the Sale Order. However, on January 26, 1992 Mr. Backenroth filed a motion to modify the Sale Order. On February 14, 1992 the Internal Revenue Service filed objections to the modified sale order proposed by Cash-Tek. The IRS specifically objected to another attempt to eradicate any waiver of the Lindos' claims:

> The proposed modified order is further objectionable because it deletes the terms that provides [*sic*] that CashTek, Herbert Lindo and Jeffrey Lindo will release the bankruptcy estate and the Trustee from any and all claims and causes of action,....

IRS Objections to CashTek's Proposed Modification of Terms of Sale of the Debtor's Assets at p. 4.

A hearing on CashTek's motion was held on February 9, 1993. At the hearing, Judge Hall was adamant that Mr. Backenroth had made numerous concessions at the November 18th hearing:

> THE COURT: You made a lot of concessions at that hearing. It was a very long hearing and we took a long time. I had to weigh two different offers. As the hearing progressed you consulted with

your client many times and you made a lot of concessions.

February 9, 1993 Hearing Transcript at p. 36. It is undisputed that Judge Hall's reference to consultations with "your client" means consultations with Mr. Lindo. Cash-Tek's motion to modify the Sale Order was denied by Judge Hall in an order dated February 16, 1993. As with the Sale Order itself, neither CashTek nor Mr. Lindo appealed this denial.

Mr. Lindo's personal involvement in effecting the sale of Kenilworth's assets to Cash-Tek is undisputed. Mr. Lindo signed or otherwise executed all of the checks made by CashTek in payment to Kenilworth. He also attended the Closing on February 16, 1993, at which the sale was consummated. More than a year later, on April 24, 1994, Mr. Lindo filed a proof of claim against the Kenilworth estate ("Claim 337") seeking indemnification for the $600,000 fine imposed upon him after his conviction for securities fraud, and for an additional $440,000 that he claimed to have expended on attorney's fees in defending his criminal case. Mr. Lindo asserts that an obligation to indemnify corporate officers is contained in Kenilworth's corporate charter.

On May 16, 1994 the Trustee commenced this adversary proceeding against Mr. Lindo, his son, his wife, Sandra Flynn, and P.J. International, another corporation formed by Mr. Lindo. The complaint seeks recovery of $1,600,000 that the defendants allegedly owe the Kenilworth estate. The defendants answered the Trustee's complaint, and Mr. Lindo filed a counterclaim seeking recovery of the full amount of Claim 337.

This appeal has its origins in the granting of the Trustee's March 14, 1995 oral motion for a default judgment against the defendants based upon their failure to attend a pretrial conference before Judge Hall on that date. The defendants responded by bringing a motion to set aside the default, as well as to eliminate the Release from the Sale Order. In addition, the defendants moved for their own default judgment based upon the Trustee's alleged failure to answer Mr. Lindo's counterclaim relating to Claim 337. The Trustee responded with a cross-motion to expunge Claim 337 on the ground that it was barred by the Release.

A hearing was held before Judge Hall on May 18, 1995. With respect to Claim 337, counsel for the defendants, Kenneth Cooperstein, Esq., argued that the Release could not serve to bar the claim because Mr. Lindo did not receive notice of the Release until after the filing of the claim. Specifically, Mr. Cooperstein asserted that "the notice of settlement was not served on Mr. Lindo or any attorney for Mr. Lindo, and there is nothing in the file to show that the actual signed order was ever served on Mr. Lindo, and Mr. Lindo never saw this order." May 18, 1995 Hearing Transcript at pp. 27–28.

Judge Hall rejected the assertion that Mr. Lindo lacked notice of the Release. Referring to the November 18, 1992 hearing on the terms of the sale of Kenilworth's assets to CashTek, Judge Hall declared that the release of Mr. Lindo's claims against the estate was

an important, necessary part of that sale; it never would have been approved if Mr. Lindo and the corporations did not agree to the release that was on the record. They know that. Mr. Becker [*sic* ] would have to know that; his face was red because I wouldn't approve a sale unless he gave us that agreement.

*Id.* at p. 29.

Judge Hall resolved the various motions before him in two orders. First, in an order dated June 7, 1995, Judge Hall set aside the default judgment against the defendants, denied the defendants' motion for a default judgment and denied the defendants' motion to vacate the Sale Order. In a second order, dated June 13, 1995, Judge Hall expunged Claim 337 on the ground that it had been released. It is the June 13th order from which Mr. Lindo appeals.

## DISCUSSION

### A. Standard of Review

■ Federal Rule of Bankruptcy Procedure 8013 provides that a bankruptcy judge's "(f)indings of fact, whether based on oral or documentary evidence, shall not be set aside

unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of witnesses." A finding of fact may be found clearly erroneous only if the reviewing court forms "a definite and firm conclusion that a mistake has been committed, after reviewing the entire record." *In re 9281 Shore Rd. Owners Corp.*, 187 B.R. 837, 847 (E.D.N.Y. 1995). The bankruptcy court's legal conclusions are reviewed *de novo. Shugrue v. Air Line Pilots Assn., Int'l.*, 922 F.2d 984, 988 (2d Cir.1990), *cert. denied*, 502 U.S. 808, 112 S.Ct. 50, 116 L.Ed.2d 28 (1991).

■ In evaluating Judge Hall's decision not to allow a claim that would necessarily alter an explicit term of the Sale Order, I am further guided by the principle that an order approving the sale of a debtor's assets should not be vacated in whole or in part for less than "circumstances of compelling equity." *In re Frankel*, 191 B.R. 564, 571 (Bankr. S.D.N.Y.1995); *see also Matter of Chung King, Inc.*, 753 F.2d 547, 549 (7th Cir.1985) ("the existence of fraud, mistake or a like infirmity would be necessary to set [a] confirmed sale aside"; citation omitted). Improper notice of the proposed sale of a debtor's assets may be a ground for setting aside a sale order. *See, e.g., M.R.R. Traders, Inc. v. Cave Atlantique, Inc.*, 788 F.2d 816 (1st Cir.1986) (Breyer, J.).

## B. The Applicable Law

■ Mr. Lindo argues that the Release contained in the Sale Order is unenforceable under New York law. However, as Judge Hall correctly found, state law is inapplicable. On the contrary, "(i)t is well established that federal law governs all questions relating to the validity of and defenses to purported releases of federal statutory causes of action." *Locafrance U.S. Corp. v. Intermodal*

*Systems Leasing*, 558 F.2d 1113, 1115 (2d Cir.1977).

A release of claims that Mr. Lindo might bring against the Kenilworth estate is a release of claims created by the Federal Bankruptcy Code. The release at issue in this case is contained in an order issued by a federal bankruptcy judge. All questions relating to the validity of and defenses to the Release are thus governed by federal law.[1]

## C. Notice of the Release

■ Judge Hall's expungement of Claim 337 was based upon a factual finding that Mr. Lindo had notice of the Release sufficient to allow it to be enforced against him. Upon a review of the record, I find that this finding was not clearly erroneous.

■ It is not disputed that Mr. Lindo was one of the parties who received notice of the proposed sale of Kenilworth's assets when the Trustee caused such notice to be delivered on October 6, 1992. Receiving such statutorily mandated notice is in itself sufficient to have triggered an obligation on the part of Mr. Lindo to exercise due diligence with respect to the protection of his interests with regard to the sale. The purpose of requiring notice of a proposed sale of a debtor's assets is to give interested parties "an opportunity to review the terms of a proposed sale, and to object thereto, if they deem the terms and conditions not to be in their best interests." *In re Caldor*, 193 B.R. 182, 186 (Bankr.S.D.N.Y.1996) (quoting *In re Sapolin Paints, Inc.*, 11 B.R. 930, 936 (Bankr.E.D.N.Y.1981)). Having received notice of the proposed sale and, indeed, having attended the November 18, 1992 hearing itself, it was incumbent upon Mr. Lindo to continue to scrutinize the terms of the sale as memorialized in the Sale Order. In accord

---

1. For the proposition that "(a) general release given or directed in a federal court is governed by the laws of the state of its creation",. Mr. Lindo cites a *Buy-N-Save v. Underwriters Ins. Co.*, 56 B.R. 644 (Bankr.S.D.N.Y.1986). Defendant-Appellant's Brief at p. 16. The release at issue in *Buy-N-Save* was a general release covering "all, and all manner of action and actions … whatsoever, in law and in equity." *Id.* at 647. *See also Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank Nat. Assoc.*, 731 F.2d 112, 122–25 (2d Cir.

1984) (applying New York law to determine the validity of a general release entered into as part of the settlement of a bankruptcy action). Neither *Buy-N-Save* nor *Aaron Ferer* addressed the issue of whether federal or state law applied, but merely looked to the law of New York in determining the validity of general releases. Here the release solely concerns claims Mr. Lindo might assert against the estate of the debtor, claims that arise under the Federal Bankruptcy Code.

with the Court of Appeals for the Seventh Circuit, I "do not think it unfair to place a duty on all interested parties to scrutinize final and binding orders confirming sales of assets of the bankrupt." *In re Whitney–Forbes, Inc.*, 770 F.2d 692, 698 (7th Cir.1985).

This conclusion applies with particular force here because the record is replete with evidence that Mr. Lindo in fact undertook such scrutiny. Mr. Lindo attended the November 18, 1992 conference and testified on the issue of the release of claims against the Kenilworth estate. Later, CashTek's counsel, Mr. Backenroth, submitted a proposed sale order which, *inter alia*, omitted any release of Mr. Lindo's claims while retaining the release of CashTek's claims. When the Sale Order was issued in January 1993, Mr. Backenroth moved to have it modified to effect the same omission. Mr. Lindo does not explain why counsel for CashTek would make two efforts to have the Release omitted from the Sale Order if not at Mr. Lindo's behest. He merely states in conclusory fashion that, in spite of his role as founder and president of CashTek, any act performed by Mr. Backenroth, including the two efforts to have Mr. Lindo's ability to bring claims against Kenilworth reinstated, were done solely on CashTek's behalf and in no sense for Mr. Lindo's benefit. Such assertions are wholly insufficient to warrant reversal of Judge Hall's finding that the Release "was an important, necessary part of that sale" and that the sale "never would have been approved if Mr. Lindo and the corporations did not agree to the release that was on the record. *They know that.*" Transcript of May 18, 1995 Hearing at p. 29 (emphasis supplied). *See In re Pizazz Disco & Supperclub, Inc.*, 114 B.R. 104, 110 (Bankr.W.D.Pa. 1990) (where corporate president's personal representations were a necessary aspect of judicial approval of sale of debtor's assets, the later effort of the president to disassociate himself from the corporation's failure to consummate the sale was "an affront to the integrity of the judicial process"), *aff'd*, 1991 WL 331033 (W.D.Pa. June 19, 1991).

■ Mr. Lindo's argument that, despite the facts set forth above, he is not bound by the Release, are without merit. He did not file an affidavit denying notice of the Release, but merely argues that it cannot be enforced against him because he did not sign the s Sale Order and a copy of the Sale Order was not personally served upon him. However, even if Mr. Lindo were to be treated as a third party to the Sale Order—despite his direct and personal role in the sale as laid out above—this would still not require the reversal of Judge Hall's order finding him bound by the Release. As a general matter, federal court orders "may bind third parties if they are not improperly prejudiced." *In re Sicari*, 151 B.R. 60, 62 (S.D.N.Y.1993) (citing *U.S. v. IBT*, 948 F.2d 98 (2d Cir.1992)). Here, Mr. Lindo cannot make a showing of prejudice because: 1) the degree of notice he received regarding the sale was sufficient to make its terms, including the Release, binding upon him and 2) actions taken after receipt of Mr. Lindo's initial notice of the proposed sale are fully consistent with Judge Hall's finding that Mr. Lindo had notice of the Release.

### D. The Applicability of the Release to Claim 337

■ Mr. Lindo also argues that the Release is not applicable to Claim 337 because the fine and the attorney's fees relating to his conviction for securities fraud were unknown at the time of the issuance of the Sale Order. Thus, Mr. Lindo reasons, the Release cannot be a bar to Claim 337 because it "does not reach [such] unasserted claims." Defendant–Appellant's Reply Brief at p. 8.

■ There is no support for this position. When construing the terms of an order memorializing a sale of a debtor's assets, "deference is to be paid to the plain meaning of the language and normal usage of the terms." *In re Oyster Bay Cove, Ltd.*, 161 B.R. 338, 343 (Bankr.E.D.N.Y.1993), *aff'd*, 196 B.R. 251 (E.D.N.Y.1996). The Release expressly encompasses claims that Mr. Lindo "has asserted or may assert." Thus, it clearly contemplated—and barred—the making of future claims.

Moreover, while Claim 337 was unasserted at the time of the issuance of the Sale Order, the substance of the claim was hardly unknown. On the contrary, Mr. Lindo's indict-

ment for securities fraud had occurred five months earlier and thus the possibility that he might seek indemnification for fines and/or attorney's fees relating to that indictment was manifest when the Sale Order was issued in January 1993. There can be no prejudice in upholding a release of a claim whose potential assertion, if not precise dollar amount, was known at the time of the making of the release.

Finally, Mr. Lindo's arguments for reversal based upon 1) allegations of the untimeliness of the Trustee's motion to expunge Claim 337 and 2) the supposed bias of Judge Hall against Mr. Lindo because of the latter's status as a convicted felon, are rejected as clearly without merit.

### CONCLUSION

The expungement of Claim 337, as memorialized in Judge Hall's order of June 13, 1995, is AFFIRMED.

**SO ORDERED.**